# UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **CALIFORNIA OREGON BROADCASTING, INC.,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **No. 06-CV-00116-NBF**<br><br>**Plaintiff California Oregon Broadcasting, Inc.'s Motion for Partial Summary Judgment As to Liability**<br><br>**ELECTRONICALLY FILED: 5/15/06** |

## I. INTRODUCTION

This lawsuit relates to property that Plaintiff California Oregon Broadcasting, Inc. ("COBi") currently leases from the National Park Service ("NPS"). The leasehold is governed by a written lease agreement, with an initial term that expires on July 31, 2006. During the months leading up to the filing of this lawsuit, COBi began to take steps to extend the lease pursuant to the Lease Agreement's Option clause. After COBi advised NPS that it would be exercising its option, NPS told COBi that it would not recognize COBi's right to extend the lease. Accordingly, on February 17, 2006, COBi filed a complaint in this Court alleging, *inter alia,* that NPS is in anticipatory breach of the Option clause of the Lease Agreement.

COBi now moves this Court for partial summary judgment on the question of NPS's liability for breach of contract.

## II. BACKGROUND FACTS

On August 11, 1955, Frank and Vivian Crawford ("the Crawfords") entered into an option relating to certain real property ("Shasta Bally") located near Redding,



245670.3

California, with a group of individuals who, shortly thereafter, assigned their rights to Shasta Telecasting Corporation ("Shasta Telecasting"). (*See* Declaration of Patricia Smullin ("Smullin Decl."), Exhibit 1). Shasta Telecasting occupied the property pursuant to the terms of the option.

On August 1, 1960, the Crawfords and Shasta Telecasting entered into a formal lease agreement to govern the terms of Shasta Telecasting's continued use of the premises. (Smullin Decl., Exhibit 1). Paragraph 13 of the agreement provided Shasta Telecasting (or its successors) with the following option:

> At the expiration of the term hereof, Lessee shall have the first right, privilege and option to renew this lease for a period of fifty (50) years at a rental to be fixed by agreement between said parties and/or their successors in interest, within ninety (90) days from the expiration of the term hereof, or by arbitration. In the event that arbitration shall be required, Lessors shall appoint one arbiter and Lessee shall appoint one arbiter, and if said arbiters cannot agree, then they shall jointly appoint a third arbiter, in which event the decision of a majority of the arbiters shall be conclusive upon Lessors and Lessee.

(Smullin Decl., Exhibit 1).

On October 23, 1970, Sacramento Valley Television, Inc. ("SVTI") (which had succeeded to Shasta Telecasting's interest in Shasta Bally) agreed to a new lease with Lois E. Tracy (who had succeeded to the Crawford's (her parents) interest in the land). (Smullin Decl., ¶ 3 and Exhibit 2). The Lease Agreement specified that the initial term would be from August 1, 1970 (retroactively) through July 31, 2006.

Paragraph 10, entitled "OPTION," sets forth the terms under which the lessee could extend the lease for an additional 50 years:

> 10. <u>OPTION</u>. At the expiration of the term hereof, Lessee shall have the first right, privilege and option to renew this Lease for a period of fifty (50) years at a rental to be fixed by agreement between said parties and/or their successors in interest. Within

> ninety (90) days prior to the expiration of said Lease, Lessee shall notify Lessor, in writing, of its election to exercise its option to extend said Lease for the additional term, and shall notify Lessor of the rental which it is willing to pay for said extended term. If said rental is not acceptable to Lessor or her successors or assigns, then within thirty-five (35) days after the receipt of such written notice, the amount of rental shall be submitted to arbitration. Lessor shall appoint one arbitrator and Lessee shall appoint one arbitrator, and if said arbitrators can not agree, then they shall jointly appoint a third arbitrator, in which event the decision of a majority of the arbitrators shall be conclusive upon Lessor and Lessee and shall be rendered and determined prior to August 1, 2006. The cost of such arbitration shall be borne equally by Lessor and Lessee.

(Smullin Decl., Exhibit 2). Thus, the paragraph is similar to the provision in the 1960 agreement except that: (1) the title of Paragraph 10 is "OPTION," and (2) it includes some additional language regarding the procedures SVTI (or its successor) is to use to exercise the option and regarding what Ms. Tracy (or her successor) must do if she does not agree with the rental rate proposed by the Lessor.

In December 1970, NPS acquired from Ms. Tracy and her siblings (Messrs. Schmidbauer and Crawford) ownership rights in certain property, including the property that is the subject of the Lease Agreement. (Smullin Decl., ¶ 4, Exhibit 3). NPS succeeded to Ms. Tracy's rights and obligations set forth in the Lease Agreement and NPS's acquisition was expressly made subject to the terms of that agreement.

In 1986, SVTI was liquidated and its assets (including its interests in the lease) were distributed to its parent, COBi. (Smullin Decl., ¶ 5).

On October 10, 2005, COBi notified NPS in writing that it would be "exercis[ing] its option to renew its mountaintop lease of Shasta Bally for an additional 50-year term." (Smullin Decl., Exhibit 4). In the letter, COBi proposed that the annual rent for

the property be $12,538.66 for the first year of the option term, subject to annual adjustment with reference to the Consumer Price Index.

In a letter dated November 1, 2005, NPS refused to acknowledge COBi's exercise of its option to extend the lease. (Smullin Decl., Exhibit 5). Specifically, NPS stated that "[t]he National Park Service ('NPS') cannot offer COBi a lease renewal." NPS went on to declare as follows:

> Under applicable law and policy, the NPS cannot offer any party, including COBi, the opportunity to lease the area on Shasta Bally. Applicable NPS law and policy provides that he only means for authorizing use of NPS lands for communications facilities is an NPS right-of-way permit and that all types of authorizations previously issued for communications facilities will be converted to NPS right-of-way permits as those authorizations expire.

(Smullin Decl., Exhibit 5).

On November 10, 2005, COBi and NPS met in person to discuss the issue of the lease option. At the meeting, NPS informed COBi that it would discuss COBi's position regarding the lease option further and then respond to COBi. (Smullin Decl., ¶ 8).

On December 2, 2005, NPS provided the response that it promised at the November 10 meeting. In the letter, as set forth below, NPS adhered to its claim that it would not recognize COBi's decision to exercise its lease option:

> We write now to reconfirm the position that we stated in our letter to you dated November 1, 2005 and that we further explained during our meeting on November 10, 2005. We do not agree with your legal conclusion regarding paragraph 10 of the lease. Under applicable California law, a term providing for "first right, privilege and option to renew" such as that contained in paragraph 10, does not provide a lessee with an absolute and exclusive right to renew a lease. Rather, paragraph 10 only grants a conditional right of first refusal if the landlord is willing to lease the premises again and does not wish to make any use of the property inconsistent with a future lease.
>
> We also write to reconfirm that under applicable law and policy,

> the NPS cannot offer COBi or any other party a lease for the area on Shasta Bally for communication purposes . . . . If COBi wishes to continue operations on Shasta Bally beyond the expiration of the current lease, it will need to agree to begin the process for issuance of a right-of-way permit soon in order to avoid interruption of operations.

(Smullin Decl., Exhibit 6).

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Rules of the Court of Federal Claims, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *General Electric Co. v. United States*, 60 Fed. Cl. 782, 789 (2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

Rule 56(c) expressly authorizes a Court to grant partial summary judgment on the issue of liability, notwithstanding a factual dispute relating to the issue of damages. Summary judgment is appropriate in the context of a breach of contract dispute. Specifically, it is the Court's province to interpret what a contract means as a matter of law. *Barseback Kraft AB v. United States*, 121 F,3d 1475, 1479-80 (Fed. Cir. 1997).

## IV. ARGUMENT

COBi is entitled to partial summary judgment on the issue of liability because, based on the unambiguous language of the Lease Agreement, COBi has the unilateral right to extend the lease. Comparing the Option term in the Lease Agreement to a similar clause in the prior lease confirms the existence of this right. Accordingly, by refusing to recognize

COBi's decision to exercise the option to extend the lease, NPS anticipatorily breached the Lease Agreement.

### A. The Lease Agreement Unambiguously Vests COBi with the Option to Extend the Lease Agreement

Based on the unambiguous language of the Lease Agreement, the agreement vests COBi with the exclusive power to extend the lease. The pertinent clause, entitled OPTION, gives COBi three distinct powers. First, COBi has the "first right" to renew the lease. Second, COBi has the "privilege" to renew the lease. Third, COBi has the "option" to renew the lease. It is this third power – the option power – that COBi has invoked to renew the lease.

Under California law[1] regarding option agreements, COBi, as the optionee, has the unilateral power to extend the Lease Agreement. *Palo Alto Town & Country Village, Inc. v. BBTC Co.,* 11 Cal. 3d 494, 502-03 (1974). In *Palo Alto Town & Country*, the California Supreme Court explained the nature of an option as follows:

> This court . . . explicitly recognized the dual aspect of an option, referring to it sometimes as an irrevocable offer which is completed by the acceptance of the optionee and sometimes as a binding contractual promise to perform the underlying contract subject to the condition precedent of acceptance by the optionee. Which aspect of an option is emphasized depends upon which party's duties are under consideration. From the point of view of the optionor's duty it is binding upon the making of the option contract. "[The] optionor has irrevocably promised upon the exercise of the option to perform the contract or make the conveyance upon the terms specified in his binding offer. . . . The creation of the final contract requires no promise or other action by the optionor, for the contract is completed by the acceptance of the irrevocable offer of the optionor by the optionee."

---

[1] Because this dispute relates to a lease agreement for real property located in California, there is no dispute that California law applies. Restatement (Second), Conflict of Laws, § 189 (1971). In addition, pre-lawsuit correspondence from the NPS confirms that NPS also believes California law to apply. (*See e.g.,* Smullin Decl., Exhibit 5).

*Id.* (citations omitted). By granting an option to COBi, NPS's predecessor-in-interest made an irrevocable offer to COBi for COBi to extend the Lease Agreement. Thus, the decision as to whether the Lease Agreement gets extended rests solely with COBi.

NPS's proffered interpretation of the clause at issue focuses on the "first right" aspect of the clause and ignores the "option" portion. California law provides that "if reasonably practicable, all parts, every word, of an agreement are to be given effect." *Thackaberry v. Pennington*, 131 Cal. App. 2d 286, 297 (1955); *see also,* Cal. Civ. Code § 1641 (2006). NPS's interpretation reads out COBi's option and transforms that option into merely a right to re-lease the premises contingent on NPS's desire to make the property available for lease.

COBi's interpretation, in contrast, gives meaning to "first right" and "option" by permitting the lease to be extended if either (1) COBi exercises its option or (2) COBi fails to exercise its option, but, when offered the first right to renew the lease by NPS, takes NPS up on that offer.

Moreover, as set forth below, COBi submits that NPS's interpretation is particularly inappropriate when the rest of the paragraph is considered. As an initial matter, it is significant that Paragraph 10 is entitled "OPTION." Notably, the contract does not include a provision specifying that titles and headings are to be given no weight in interpreting the contract. Thus, the use of the word "OPTION" as a title of the clause and in all capital letters provides further credence to COBi's interpretation that the parties intended for COBi to have a true option (i.e., a unilateral right) to extend the lease.

In addition, the second sentence in Paragraph 10 confirms that, whatever else may be true, COBi alone has a unilateral right to extend the Lease Agreement. Specifically,

after granting the lessee an option to extend the lease, Paragraph 10 explains how the lessee – now COBi – is to exercise that option: "Within ninety (90) days prior to the expiration of said Lease, Lessee shall notify Lessor, in writing, of its election to exercise its option to extend said Lease for the additional term, and shall notify Lessor of the rental which it is willing to pay for said extended term." Significantly, the sentence instructs COBi of how to notify NPS of <u>its</u> election to exercise <u>its</u> option.

Nothing in Paragraph 10 suggests that COBi's option election is conditioned upon NPS's willingness to extend the lease. In fact, the second sentence, premised on unilateral action by the lessee, makes no sense under NPS's interpretation that COBi has a right to renewal only if NPS decides to offer it. In this respect as well, NPS's interpretation depends on failing to give any effect to specific language in the agreement.

Rather than NPS having control over whether COBi can extend the lease by exercising its option, NPS's input is limited to the terms of that extension. Specifically, under Paragraph 10, it is only after the lessee notifies the lessor of (1) its intent to extend the lease and (2) the rental rate it is willing to pay, that the lessor is involved. At that point, the lessor has only two choices – it can accept the lessee's proposed rental rate or it can submit the matter to arbitration for determination of an appropriate rental rate. Significantly, the clause does not permit the lessor simply to reject the lessee's proposed rental rate.

Finally, COBi submits that, in interpreting the clause, the Court should be guided by the maxims of contract interpretation that "a grant is to be interpreted in favor of the grantee" and that "in construing provisions of a lease relating to renewals, where there is any uncertainty, the tenant is favored, and not the landlord, because the latter, having the power of stipulating in his own favor, has neglected to do so" *Streicher v. Heimburge*, 205



245670.3

Cal. 675, 683 (1928). Based on these well-settled principles, it is clear that COBi's interpretation of the clause controls.

**B. Differences Between the 1970 Lease Agreement and the Prior Lease Confirm COBi's Interpretation**

Language added to the contract in 1970 confirms that the parties intended for SVTI (or its successor) to have a unilateral right to extend the Lease Agreement at the expiration of the initial term. First, in drafting the 1970 Lease Agreement, the parties added titles to all clauses. As described above, the parties chose to entitle the clause at issue in this litigation "OPTION." COBi submits that any possible doubt as to whether SVTI or its successor COBi had a unilateral right to extend the lease was eliminated by the parties' decision to title the pertinent clause "OPTION" in all capital letters in the 1970 Lease Agreement.

Second, also as described above, the OPTION clause in the 1970 Lease Agreement included a new sentence setting forth how the lessee could "exercise its option." The parties' conduct – choosing to add this sentence to the 1970 Lease Agreement – highlights the inappropriateness of reading this new language out of the agreement as NPS's interpretation would require. Instead, it confirms that the parties were providing that the lessee has the power to decide whether to extend the lease unilaterally.

Thus, comparing the 1970 Lease Agreement with the earlier agreement leads to the inescapable conclusion that the parties intended for the decision to extend the lease term rest solely with the lessee – COBi.

### C. NPS Anticipatorily Breached the Lease Agreement

After COBi notified NPS that it intended to exercise its option to extend the lease, NPS responded that it would not recognize COBi's election. With this unequivocal refusal to recognize COBi's exercise of its option, NPS anticipatorily repudiated its obligations under the Lease Agreement, and, accordingly, NPS breached the terms of that agreement.

Under California law, "[a]contract is totally breached and an anticipatory repudiation occurs when the promisor without justification and before he has committed a breach, makes a positive statement to the promisee indicating that he will not or cannot substantially perform his contractual duties." *Gold Mining & Water Co. v. Swinerton*, 23 Cal. 2d 19, 29 (1949). Here, on several occasions, NPS stated that it would not recognize COBi's option exercise. For instance, in its November 1, 2005 letter to COBi, NPS stated that "the NPS cannot offer any party, including COBi, the opportunity to lease the area on Shasta Bally." (Smullin Decl., Exhibit 5). And, on December 2, 2005, NPS explained that "the NPS cannot offer COBi or any other party a lease for the area on Shasta Bally for communication purposes . . . . If COBi wishes to continue operations on Shasta Bally beyond the expiration of the current lease, it will need to agree to begin the process for issuance of a right-of-way permit soon in order to avoid interruption of operations." (Smullin Decl., Exhibit 6).

NPS's letters reflect a fundamental misapprehension of the option term of the Lease Agreement. Specifically, NPS states that it "cannot offer COBi . . . a lease for the area." NPS's predecessor, however, already did make such an offer, and COBi accepted that

offer. Whether applicable law and policy would permit NPS now to offer a lease to COBi or any other party is completely irrelevant.

Thus, through these letters, NPS made a positive statement that it would not recognize COBi's exercise of its option to extend the lease. Accordingly, under California law, NPS anticipatorily repudiated the Lease Agreement and is in breach of that agreement.

## V. CONCLUSION

The unambiguous language of the 1970 Lease Agreement establishes that COBi has a unilateral right to extend the agreement. Any possible doubt regarding this issue disappears when the agreement is compared to the prior lease governing the property. NPS anticipatorily breached the terms of the 1970 agreement by refusing to recognize COBi's right. Accordingly, COBi is entitled to partial summary judgment on the issue of NPS's liability for breach of contract.

Dated: May 15, 2006

Respectfully submitted,

_s/Neil H. O'Donnell by s/Mark A. Kahn_

NEIL H. O'DONNELL
ROGERS JOSEPH O'DONNELL & PHILLIPS
311 California Street
San Francisco, CA 94104
Tele. (415) 956-2828
Fax (415) 956-6457

Attorneys for Plaintiff California Oregon Broadcasting, Inc.

OF COUNSEL:

Mark A. Kahn
ROGERS JOSEPH O'DONNELL & PHILLIPS
311 California Street
San Francisco, CA 94104
Tele. (415) 956-2828
Fax (415) 956-6457

CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2006, a copy of the foregoing "Plaintiff California Oregon Broadcasting, Inc.'s Motion for Partial Summary Judgment As to Liability" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Mark A. Kahn__________