# UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **CALIFORNIA OREGON BROADCASTING, INC.,**<br>**Plaintiff,**<br>vs.<br>**UNITED STATES OF AMERICA,**<br>**Defendant.** | **No. 06-CV-00116-NBF** |

## DECLARATION OF PATRICIA C. SMULLIN

I, Patricia C. Smullin, declare as follows:

1. I am the President and owner of California Oregon Broadcasting, Inc. ("COBi").

2. Attached as Exhibit 1 to this declaration is a true and correct copy of a 1960 Lease Agreement from COBi's files. The agreement was entered into in August 1960 by Shasta Telecasting, a predecessor-in-interest of COBi, and Frank M. Crawford and Vivian Crawford, under which Shasta Telecasting occupied certain real property known as "Shasta Bally" located near Redding, California. The lease is located in COBi's files in a file entitled Shasta Bally - Crawford Distributees Contracts.

3. Attached as Exhibit 2 to this declaration is a true and correct copy of a 1970 Lease Agreement from COBi's files. The agreement was entered into on or about October 23, 1970 by Sacramento Valley Television, Inc. ("SVTI"), which was Shasta Telecasting's successor, and Lois Tracy, as beneficiary of the estate of the Crawfords (her



05/15/2006 MON 08:52 [TX/RX NO 8150] 002

parents) and governs SVTI's tenancy on Shasta Bally. The Lease Agreement is located in the same COBi file, entitled Shasta Bally – Crawford Distributees Contracts, as Exhibit 1.

4. Attached as Exhibit 3 to this declaration is a true and correct copy of a Warranty Deed from COBi's files. The Warranty Deed was executed by Lois Tracy on or about December 22, 1970. The Warranty Deed is located in the same COBi file, entitled Shasta Bally – Crawford Distributees Contracts, as Exhibits 1 and 2.

5. In 1986, SVTI was liquidated and its assets (including its interests in the Lease Agreement) were distributed to its parent, COBi.

6. In my capacity as President and owner of COBi, I have been in communication with the National Park Service ("NPS") regarding exercising COBi's option to extend the October 23, 1970 Lease Agreement that was entered into between Sacramento Valley Television, Inc. (COBi's predecessor-in-interest) and Lois Tracy and her siblings (NPS's predecessor-in-interest). Specifically, on October 10, 2005, I sent a letter to Jim F. Milestone of NPS formally notifying NPS that COBi would be exercising its option to renew the lease. A true and correct copy of that letter is attached as Exhibit 4 to this declaration.

7. On or about November 1, 2005, I received a letter from NPS notifying COBi that NPS would not permit COBi to exercise its option. A true and correct copy of that letter is attached as Exhibit 5 to this declaration.

8. On November 10, 2005, COBi and NPS met in person to discuss the issue of the lease option. At the meeting, NPS informed COBi that it would discuss COBi's position regarding the lease option further and then respond to COBi.

9. On or about December 2, 2005, I received another letter from NPS. In this letter, NPS reconfirmed that it would not allow COBi to exercise its lease option. A true and correct copy of that letter is attached as Exhibit 6 to this declaration.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 15, 2006.

PATRICIA C. SMULLIN

# Exhibit 1

cc AYG
7-16-64

# LEASE

THIS LEASE, made as and of the 1st day of August, 1960, by and between FRANK M. CRAWFORD and VIVIAN CRAWFORD, his wife, hereinafter called "Lessors," and SHASTA TELECASTING CORPORATION, a corporation, hereinafter called "Lessee,"

WITNESSETH:

WHEREAS, Lessors herein named entered into a certain option, dated August 11, 1955, in which they were named as first parties, and Laurence W. Carr, George C. Fleharty, William B. Nystrom, C. T. Ross, George H. Voorhies, Carl R. McConnell, Morris K. Cohen and Robert C. Hammett, were named as second parties, and

WHEREAS, prior to June 1, 1956, all rights of second parties in and to said option were assigned to Lessee herein named, and

WHEREAS, Lessee has been occupying the premises described in said option and hereafter particularly described under the provisions of said option, and no formal lease has been executed between Lessors and Lessee herein named prior to this date for the reason that a dispute has arisen between Lessors and Lessee as to the use of said premises and the rental to be received by Lessors, and

WHEREAS, a dispute has arisen between the parties concerning the right of Lessee to sublet the premises, and

WHEREAS, the parties desire to settle said dispute, Lessee having agreed to share rentals from subleases with Lessors, and

WHEREAS, pursuant to an account stated as of August 1, 1960, Lessee acknowledges that one-half of said rents with appropriate adjustment, all as set forth in a letter of even date herewith, amounts to $3,534.65; said balance being hereafter referred to for convenience as the "sublease obligation,"

WHEREAS, simultaneously with the execution of this agreement, Lessee has paid the Lessors the sum of $1200.00 for rental under the option agreement to and including the 31st day of July, 1960, receipt of which is hereby acknowledged by Lessors.

NOW, THEREFORE, IT IS AGREED AS FOLLOWS:

1. Lessee agrees to pay Lessors as one of the considerations for the execution of this agreement, the sum of $3,534.65, constituting said sublease obligation. Said sum shall be paid at the time and in the manner hereinafter set forth.

2. This agreement supersedes any written or oral arrangement between Lessors and Lessee entered into prior to this date.

3. Lessors hereby demise and let and Lessee hereby hires from Lessors that certain real property in the County of Shasta, State of California, described as follows:

> Five (5) acres on the top of Shasta Bally Mountain, situate in Section 27, Township 32 North, Range 7 West, M.D.B. & M.

It is understood that the exact area will be established by survey when practical, and the metes and bounds description of said acreage shall be attached hereto and marked Exhibit "A" and thereafter comprise the property covered by this lease; said five acre parcel is to be selected by Lessee. In addition to the property leased herein, Lessors grant to Lessee co-extensive with the terms of this lease, such rights of access as may be possessed by grantors and which they may have the legal right to grant to Lessee for access to and from the property herein leased. Lessee shall also be entitled to use such water or water rights connected with said premises as shall be consistent with other uses to be made by Lessors of their adjoining property, including the use of the remainder of

said Section 27. In this regard, it is understood that should Lessee develop any water or spring on lands of Lessors pursuant to the provisions of this paragraph, such development by Lessee shall not limit or prevent Lessors, their assigns or subsequent Lessees from using water from such source, provided that to the extent that Lessee shall develop water for use upon Lessee's premises, Lessee shall be entitled to use so much thereof as shall be reasonably required for the conducting of Lessee's business upon said premises.

4. In connection with said demised premises, Lessors do hereby reserve the right to enter and cross said demised premises for the purpose of gaining access to the balance of their land or for the purpose of constructing and maintaining pipe lines, electrical transmission lines, telephone lines, guy lines and guy anchors, provided that the same may not interfere with the facilities of Lessee erected upon said premises, and further provided that said installations shall be so constructed that they shall not interfere with Lessee's ability to transmit and broadcast a signal sufficient to provide the optimum service required of it in it's business of radio and/or television transmitting and broadcasting. In consideration of said reservation, Lessors do hereby grant to Lessee, its' successors or assigns, the right to construct and maintain across Lessors' land when required any pipe line, electrical transmission line, telephone line, guy line and guy anchors, provided that the same shall not unreasonably interfere with any facilities or improvement previously made by Lessors, their administrators or assigns or subsequent Lessees.

5. The term of this lease shall be for a period of forty-six (46) years, commencing as of August 1, 1960, and extending to and including the 31st day of July, 2006, at an annual rental as follows:

(a) The sum of $600.00 upon the execution of this agreement, constituting rental from August 1, 1960, to July 31, 1961.

(b) The sum of $660.00 on the 1st day of August, 1961, and a like sum of $660.00 on the 1st day of August of each year thereafter to and including the 1st day of August, 1965. Thereafter, said rental at the commencement of each succeeding five-year term shall be increased by an additional sum of 10% of said $600.00, i.e., on August 1, 1966, the sum of $720.00 per annum, and on August 1, 1971, the sum of $780.00, etc.

6. It is specifically agreed between the parties hereto that Lessee shall have the right to construct, maintain and operate television and/or radio broadcasting and/or transmitting facilities on said demised premises, and shall also have the right to maintain and operate such electronic facilities which are directly connected with the operation of said television and/or radio broadcasting and/or transmitting facilities. Said Lessee shall not have the right, except as hereinafter provided, to construct, maintain or operate either directly or indirectly other types of radio or electronic communication devices, with the exception of the existing agreement between Lessee and the Pacific Gas and Electric Company whereby said Pacific Gas and Electric Company has constructed Lessee's transmitter tower, and in consideration therefor, has a right to construct and maintain its own radio communications. Said agreement

is hereby confirmed and approved, provided, however, that the right of Pacific Gas and Electric Company to maintain such radio communications system shall be limited to its own particular uses and may not be used for the benefit of other persons, firms or corporations.

7. It is understood and agreed that Lessors contemplate the execution of independent agreements of a duration to be agreed upon with employees of Lessee, for the operation of additional facilities by said employees, together with the leasing and sub-leasing of space and the furnishing of maintenance for electronic facilities upon the premises herein leased during the term hereof and any extensions.

It is understood and agreed further that said persons shall be persons agreeable to both Lessors and Lessee.

It is further contemplated that such agreements will make appropriate provision for the furnishing of electrical energy from the facilities heretofore installed by Pacific Gas & Electric Company under an agreement with Lessee, and that Lessee shall have the right to fix the amount of reimbursement to be made to compensate Lessee for its development cost in providing said power facilities, subject to the conditions of existing leases.

It is further contemplated that as a condition for such agreement, Lessee will require reimbursement directly by such con-tractee of accrued rental herein designed as "sublease obligation." Said sum shall be paid at the rate of $100.00 per month commencing on the 1st day of August, 1960, and continuing thereafter until fully paid. Lessee guarantees payment of said sum.

Such reimbursement of $100.00 per month shall be paid by said contractee to Lessors in satisfaction of the sublease obligation.

Said Lessee herein named guarantees due performance of such payment by said contractee, and his failure to make such payment shall entitle Lessors to declare the whole unpaid balance thereof immediately due and payable by said Lessee as guarantor thereof.

8. Lessee shall pay to Lessors the said rent in the manner herein specified, and at the expiration of said term, or any extension thereof, or any earlier termination of this lease, it will peaceably quit and surrender and yield up to Lessors, their successors or assigns, the said premises in good condition and repair as hereinafter specified.

9. Lessee assumes liability for all claims or demands for injury or damage to person or property arising from accidents or otherwise, which may occur in or upon the leased premises during said term, save and except such injury or damage as may result from any use of said premises by Lessors. Lessee agrees to indemnify and save harmless and defend Lessors from any claim or demand.

10. During Lessee's occupancy of said premises hereunder it will pay all charges for water, electricity, gas, telephone and other public utility services used by it upon said premises.

11. Lessee, paying the rent and performing the covenants on its part herein contained, shall and may peaceably and quietly have, hold and enjoy the same premises for the term aforesaid, subject to the terms, covenants and conditions hereof.

12. If any rent shall be due and unpaid, or if default shall be made in any of the covenants or agreements herein made by Lessee and such default shall continue for a period of thirty (30) days after written demand for performance, it shall be lawful for Lessors, their agent or attorney, forthwith to re-enter and

take possession of said premises and remove all persons therefrom and at their option to terminate this lease or said Lessors shall have the right to exercise any legal or equitable right accruing to them as a result of such breach, including an action for specific performance.

13. At the expiration of the term hereof, Lessee shall have the first right, privilege and option to renew this lease for a period of fifty (50) years at a rental to be fixed by agreement between said parties and/or their successors in interest, within ninety (90) days from the expiration of the term hereof, or by arbitration. In the event that arbitration shall be required, Lessors shall appoint one arbiter and Lessee shall appoint one arbiter, and if said arbiters cannot agree, then they shall jointly appoint a third arbiter, in which event the decision of a majority of the arbiters shall be conclusive upon Lessors and Lessee.

14. It is understood and agreed that Pacific Gas and Electric Company has constructed an electrical line to service the facilities of Lessee. It is expressly agreed that Lessors, their successors or assigns, or other lessees shall have the right to receive electrical energy from said line, subject to the regulations and consent of the Pacific Gas and Electric Company. It is also understood and agreed that Lessee or its permitted sublessees have constructed or may construct a road to gain access to said demised premises. It is understood that any road or right of way for road purposes in the name of Lessee or its permitted sublessees may be used and enjoyed by Lessors, their assigns or other tenants, in common with said Lessee and its permitted sublessees, provided that the maintenance cost of said road shall be borne by Lessors, Lessee and/or other permitted users in the ratio that each party's

use bears to the total maintenance expense. It is agreed between the parties that the demised premises and a certain portion of the other lands owned by Lessors are peculiarly situated and located for television and radio transmission purposes for service to the City of Redding, County of Shasta, and the Counties of Siskiyou, Modoc, Humboldt, Tehama, Butte and other counties south and to the east and north thereof. As a result of the location and the use to which the respective lands of Lessors and the demised premises may be hereafter put, both Lessors and Lessee expressly agree to be bound by the provisions of Section 3.635 of the Rules and Regulations of the Federal Communications Commission as now enacted or that later may be amended or enlarged.

15. Lessee shall keep in effect at all times during the term of this lease public liability insurance in a minimum amount of $100,000.00 for one injury and $200,000.00 for one occurrence, furnishing to Lessors certificates of such insurance, which will provide among other things that such insurance cannot be cancelled or modified without ten days' written notice to said Lessors.

16. In the event it shall become necessary for either Lessors or Lessee to institute legal action to enforce the provisions of this agreement, then, in that event, the non-defaulting party shall be entitled to reasonable attorney's fees in the event that judgment in said action is in favor of the non-defaulting party.

17. Notices to be given pursuant to the terms of this lease shall be deemed sufficient, if made in writing, deposited in the United States mail, postage prepaid, and addressed as follows:

To: Mr. Frank M. Crawford
P. O. Box 120
Ukiah, California

To: Shasta Telecasting Corporation
2770 Pioneer Drive
Redding, California

Such addresses may be changed from time to time by either party by serving notices as above provided.

18. Time is expressly made the essence hereof, and the provisions of this lease shall be binding upon the heirs, administrators, executors and assigns of Lessors and upon the successors and assigns of Lessee.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands the day and year first above written.

FRANK M. CRAWFORD (s)
Frank M. Crawford

Vivian Crawford (s)
Vivian Crawford

LESSORS

SHASTA TELECASTING CORPORATION

By George L. Fleharty (s)
President

By Laurence W. Carr (s)
Secretary

LESSEE

# Exhibit 2

Recorded: December 22, 1970
in Book 1051 of Official
Records, at Page 472, Shasta
County Records

# LEASE

THIS LEASE, made and entered into this 23rd day of October, 1970, by and between LOIS E. TRACY hereinafter called "Lessor", dealing with the hereinafter described demised property as her sole and separate property, MARY MARGARET SCHMIDBAUER, LOIS E. TRACY and WILLIAM G. CRAWFORD, as distributees in the Estate of Frank M. Crawford and Vivian Crawford, hereinafter referred to as "Crawford Distributees", and SACRAMENTO VALLEY TELEVISION, INC., a corporation, hereinafter called "Lessee".

WITNESSETH:

WHEREAS Lois E. Tracy is the owner of the 5-acre demised premises described in Exhibit A and Parcel 2 described in Exhibit B attached hereto; the Crawford Distributees are the owners of Parcel 1 described in Exhibit B attached hereto; Lessor and the Crawford Distributees are the owners of Parcel 3 described in Exhibit B attached hereto; and

WHEREAS, the predecessors in interest of the parties hereto had entered into various agreements affecting the lands described in Exhibits A and B hereto attached, and it is deemed for the benefit of the parties hereto that this Lease be executed to clarify and modify the prior agreements, hereby canceling and terminating all prior agreements,

NOW, THEREFORE, IN CONSIDERATION OF THE TERMS, COVENANTS AND CONDITIONS AS HEREINAFTER SET FORTH, IT IS AGREED AS FOLLOWS:

1. The Lessor hereby demises and lets unto Lessee that certain 5 acre parcel of real property in the County of Shasta, State of California, described in particular on Exhibit "A", attached hereto and hereby made a part hereof, for the following term, use and rental.

2. TERM OF LEASE. The term of this Lease shall be from August 1, 1970, to and including the 31st day of July 2006, except as the same may be extended for an additional period of fifty (50) years as provided in paragraph 10 hereof.

3. USE OF PREMISES. It is specifically agreed between the parties hereto that Lessee shall have the right on the herein demised premises, to construct, maintain and operate its television transmitting facilities, radio communication, microwave location, and any other electronic communication facilities now in existence or that may hereafter be developed as a result

of the growth or improvements of the electronic arts and in addition, subject to the conditions hereinafter set forth, Lessee shall have the right to maintain any buildings or structures necessary to house its employees and electronic facilities on the herein demised premises.

Lessee shall have the right, without limitation, to assign, sublet, or underlet all or any part of said demised premises for any purposes granted hereunder. Lessee shall insure compliance by any assignee or sublessee with all of the terms and conditions as set forth herein. Failure of Lessee to take reasonable steps to enforce compliance herewith by any sublessee will be grounds for cancellation.

4. RENTAL. Lessee agrees to pay to Lessor as rental for the use and occupancy of the demised premises the sum of $2,500.00, per annum, payable in advance, on the first day of August of each year, commencing on the first day of August, 1970, to and including the first day of August, 2005.

5. ADDITIONAL RIGHTS AND USES. It is recognized and agreed between the parties hereto that there is a spring in existence on the property described in Exhibit "B", which exhibit is attached hereto and hereby made a part hereof, which spring provides the only source of water for Lessee's facilities, and that Lessee has a water system in existence which furnishes water from said spring to its facilities. Lessor and the Crawford Distributees hereby grant to Lessee co-extensive with the terms of this Lease, the first right to use such water, or all of it if needed for its purposes, and any excess not so required by Lessee may be used by the Lessor, the Crawford Distributees, their successors or assigns. In addition to the property leased herein, Lessor and Crawford Distributees grant to the Lessee co-extensive with the terms of this Lease, such rights of access as may be possessed by said Lessor and Crawford Distributees and which they may have the legal right to grant to Lessee for access to and from the demised premises.

It is further understood and agreed that there is in existence a road, leading across the property described as Parcel 1, in Exhibit "B", hereto, leading to and traversing the 5-acres demised premises described in Exhibit "A", and that certain electrical power lines are in existence over said property,

constructed by the Pacific Gas and Electric Company to provide electrical energy for Lessee's installations. Lessor and the Crawford Distributees do hereby reserve for themselves, their successors and assigns, the right to use said road for the purpose of gaining unlimited access to their land not subject to this Lease, and for the purpose of constructing and maintaining pipelines, electrical transmission lines, telephone lines, guy lines and guy anchors, provided that the same do not interfere with the facilities of Lessee erected or hereafter to be erected upon said 5-acre demised premises, and further provided that said installations shall be so constructed that they shall not interfere with Lessee's ability to transmit and broadcast a signal sufficient to provide the optimum service required of it in its permitted use of said premises.

It is further understood and agreed between the parties hereto that the use of the 5-acre demised premises for television, radio, microwave and other communication purposes shall be exclusive to Lessee. The Lessor and Crawford Distributees, their successors and assigns, shall not during the term hereof hereafter grant a right to directly or indirectly permit the use of any land described as Parcels 1 and 2 in Exhibit "B" hereto, for television, radio, microwave or other electronic communication purposes without the express written consent of Lessee first had and obtained.

6. INDEMNIFICATION. Lessee at all times shall keep in effect public liability insurance in a minimum sum of One Hundred Thousand Dollars ($100,000.00) for injury or death to any one person, Two Hundred Thousand Dollars ($200,000.00) for injury or death for any one occurence, and property damage insurance in the sum of Fifty Thousand Dollars ($50,000.00). Said insurance shall name Lessor as co-insured, and Lessor shall be furnished certificates of such insurance which shall provide, among other things, that said insurance may not be canceled or modified without ten (10) days written notice thereof. Lessee agrees to indemnify and hold Lessor harmless from all loss, costs, claims, suits and judgments for property damage and/or personal injury, including death, arising out of the use and occupancy of said premises by Lessee, its agents, contractors, sub-contractors, or employees, or any of them, howsoever caused.

7. TITLE TO IMPROVEMENTS. It is specifically understood and agreed that all electronic equipment, buildings, and other structures in place or that may hereafter be installed by Lessee shall at all times remain its property, and

at the end of said Lease, or sooner termination thereof, Lessee shall have the right and obligation to remove same. If upon termination of said Lease, the Lessee fails to remove all structures and debris resulting from exercise of said Lease within a reasonable time, the Lessor may claim title to such structures and other facilities abandoned, and may remove and dispose of any such remnants at the expense of the Lessee.

8. ADDITIONAL RIGHTS AND CONDITIONS. a. The Lessor and her assigns reserves and shall have the right to build a road for vehicular use at least 20 feet wide around Lessee's facilities and across the 5-acre demised premises for access to the lands surrounding the said 5-acre demised premises.

b. If Lessee decides to build a fence around its facilities on the 5-acre demised premises, then the fence shall be established so as not to prohibit the construction, maintenance, and use of the road described in the preceding paragraph. The cost of such fencing shall be at the expense of Lessee.

c. Lessee may, in the future, erect on the 5-acre demised premises such dwellings as may be required for the housing of operating personnel. The plans of the dwellings shall be approved first by Lessor or her assigns. Such approval will not be unreasonably withheld. No dwelling or other building shall be erected in excess of 35 feet in height, towers and electronic facilities excepted.

d. Any buildings so erected, and the structures now on the 5-acre demised premises, or those which may be installed by Lessee, shall be painted in conformity with Government regulations, subject to the rules and regulations of the Federal Communications Commission, the Federal Aviation Administration, and other appropriate governing authorities, and pursuant to color requirements of the industry. It is understood the intent of this provision shall be that, subject to painting requirements imposed by the FCC and FAA, the selection of colors shall be Lessee's choice, provided said colors are not garish.

e. Lessee agrees to maintain the 5-acre demised premises in an orderly manner and prevent the accumulation of debris and trash so as not to detract from the aesthetic appearance of the area.

f. Lessee agrees to permit Lessor to install and maintain, without rental cost, National Park Service radio equipment in Lessee's transmitter building, compatible with Lessee's existing facilities.

9. DEFAULT. If any of the parties to this Lease shall fail to perform any of the terms, covenants or conditions imposed upon them under the terms and provisions hereof, then at the election of the non-defaulting party, this Lease may be canceled and terminated, and the non-defaulting party shall be relieved from further performance hereunder, or shall be entitled to any other rights at law or in equity to which it is entitled at the time of such default, including an action for specific performance. No party to this agreement shall be deemed in default unless they shall fail to cure any alleged default within thirty (30) days after receipt of written notice of such default. In the event it shall become necessary for any of the parties hereto institute any legal action to enforce the terms and provisions of this agreement, after the other's default, then in that event the non-defaulting party shall be entitled to reasonable attorney's fees in such action in the event judgment is in favor of the non-defaulting party.

10. OPTION. At the expiration of the term hereof, Lessee shall have the first right, privilege and option to renew this Lease for a period of fifty (50) years at a rental to be fixed by agreement between said parties and/or their successors in interest. Within ninety (90) days prior to the expiration of said Lease, Lessee shall notify Lessor, in writing, of its election to exercise its option to extend said Lease for the additional term, and shall notify Lessor of the rental which it is willing to pay for said extended term. If said rental is not acceptable to Lessor or her successors or assigns, then within thirty-five (35) days after the receipt of such written notice, the amount of rental shall be submitted to arbitration. Lessor shall appoint one arbitrator and Lessee shall appoint one arbitrator, and if said arbitrators can not agree, then they shall jointly appoint a third arbitrator, in which event the decision of a majority of the arbitrators shall be conclusive upon Lessor and Lessee and shall be rendered and determined prior to August 1, 2006. The cost of such arbitration shall be borne equally by Lessor and Lessee.

11. During Lessee's occupancy of said demised premises it will pay all charges for water, electricity, gas, telephone and other public utility services used by it upon said premises.

12. Lessee, paying the rent and performing the covenants on its part herein contained, shall and may peaceably and quietly have, hold and enjoy the same premises for the term aforesaid, subject to the terms, covenants and conditions hereof.

13. Notices to be given pursuant hereto shall be deemed sufficient if in writing, delivered personally, or deposited in the United States mail, postage prepaid, addressed as follows:

To: Lois E. Tracy and the Crawford Distributees
255 Deerwood Drive
Ukiah, California

To: Sacramento Valley Television, Inc.
P. O. Box 7R
Redding, California 96001

or to such other addresses as the parties hereto may hereafter specify in writing.

14. Time is expressly made the essence hereof, and the provisions of this Lease shall be binding upon the heirs, administrators, executors, successors and assigns of Lessor and the Crawford Distributees, and upon the successors and assigns of Lessee.

15. The parties hereto expressly cancel and terminate all prior agreements affecting the lands described in Exhibits "A" and "B" hereto attached.

IN WITNESS WHEREOF, the parties hereto have executed this agreement the day and year first above written.

Lois E. Tracy
LOIS E. TRACY
Lessor and Crawford Distributee

Mary Margaret Schmidbauer
MARY MARGARET SCHMIDBAUER
Crawford Distributee

WILLIAM G. CRAWFORD
Crawford Distributee

(SEAL)

SACRAMENTO VALLEY TELEVISION, INC.

By ______________________
President Richard W. Green

By ______________________
Secretary John A. Spann

STATE OF CALIFORNIA )
) ss
COUNTY OF MENDOCINO )

On this 23 day of October, 1970, before me, LAURA GULLETT, a Notary Public in and for the County of MENDOCINO, State of California, residing therein, duly commissioned and sworn, personally appeared LOIS E. TRACY, MARY MARGARET SCHMIDBAUER and WILLIAM G. CRAWFORD known to me to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same.

IN WITNESS WHEREOF I have hereunto set my hand and affixed my official seal in the County of MENDOCINO the day year in this certificate first above written.

OFFICIAL SEAL
LAURA GULLETT
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
MENDOCINO COUNTY
My Commission Expires January 23, 1972

Laura Gullett
Notary Public in and for the County of Mendocino, State of California

STATE OF CALIFORNIA )
) ss
COUNTY OF Shasta )

On October 23, 1970, before me, the undersigned a Notary Public in and for said State, personally appeared Richard W. Green known to me to be the President, and John A. Spann known to me to be Secretary of the corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument on behalf of the Corporation therein named, and acknowledged to me that such Corporation executed the within Instrument pursuant to its by-laws or a resolution of its Board of Directors.

WITNESS my hand and official seal.

Signature: M. K. Morin My Commission expires ________

M. K. Morin
(Name Typed or Printed)

OFFICIAL SEAL
M. K. MORIN
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
SHASTA COUNTY
My Commission Expires July 2, 1974

DEMISED PREMISES

All that piece or parcel of land situate in the County of Shasta, State of California, located in Section 27, Township 32 North, Range 7 West, M.D.B.&M., described as follows:

Commencing at a point, said point being North 88° East, 300 feet from the center of the Pacific Gas and Electric Transmitting Tower, as it existed on August 1, 1960, now located on said section, running thence North 60° West, 600 feet to a point, thence South 30° West, 400 feet to a point, thence South 60° East, 600 feet to a point, and thence North 30°East, 400 feet to the point of beginning, containing 5.5 acres, more or less.

EXHIBIT "A"

All that land situate in the County of Shasta, State of California in Township 32 North, Range 7 West, M.D.B.&M., described as follows:

Crawford, Dist. own Parcel 1 in Ex B

PARCEL 1

All of Section 27 EXCEPT that 5.5 acre parcel described as follows:

> Commencing at a point, said point being North 88° East, 300 feet from the center of the Pacific Gas and Electric Transmitting Tower, as it existed on August 1, 1960, now located on said section, running thence North 60° West, 600 feet to a point, thence South 30° West, 400 feet to a point, thence South 60° East, 600 feet to a point, thence North 30° East, 400 feet to the point of beginning,

containing 612.7 acres, more or less.

Tracy owns Ex A & Parcel 2 in Ex B

PARCEL 2

The Northeast Quarter (NE¼), East half of the Northwest Quarter (E½NW¼), the Northeast Quarter of the Southwest Quarter (NE¼SW¼), and the North half of the Southeast Quarter (N½SE¼) Section 28, containing 360 acres, more or less.

PARCEL 3

An easement sixty (60) feet in width, through, over and across the W½ of the W½ of Section 28, T. 32 N., R. 7 W., M.D.M., as set forth in that certain right of way deed between Clear Creek Lumber Company, a California corporation, and Frank M. Crawford and Vivian Crawford, his wife, dated December 29, 1964; and an easement sixty (60) feet in width, through, over and across Section 18 and Section 20, T. 32 N., R. 7 W., M.D.M., as set forth in that certain right of way deed between Northern California Lumber Company, a California corporation, and Frank M. Crawford and Vivian Crawford, his wife, dated December 29, 1964.

Sac Valley & Crawford Dist own Parcel 3 in Ex B

EXHIBIT "B"


Shasta Bally
Boulder
Crystal Creek
C.C.C. Camp
Crystal
S.P. LAND CO.
LANDLES
U.S. PLYWOOD
CRAWFORD
NICHOLSON
TRINITY LOGGING CO.
14
15
16
17
20
21
22
23
26
27
28
29
32
33
34
35

# Exhibit 3

RECO... AT REQUEST OF
NORTH VALLEY TITLE & ESCROW CO.
AT 30 MIN. PAST 10 A.M.
OFFICIAL RE... SHASTA COUNTY, CALIF.
DEC 22 1970
Volume 1051 Page 481
Mildred Montgomery
RECORDER FEE $ 2.80

17806

WARRANTY DEED

We, Lois E. Tracy, joined herein by her husband, Donald L. Tracy; Mary Margaret Schmidbauer, joined herein by her husband, George A. Schmidbauer, and William G. Crawford, joined herein by his wife, Karen Crawford, Grantors, in consideration of the sum of NINETY SEVEN THOUSAND EIGHT HUNDRED TWENTY AND NO/100 ($97,820.00) DOLLARS, to us in hand paid by the UNITED STATES OF AMERICA, the receipt of which is hereby acknowledged, do by these presents grant, bargain, sell, and convey unto the UNITED STATES OF AMERICA and its assigns, all that certain real property, situated in the County of Shasta, State of California, to wit:

All of Section Twenty-seven (27), and the Northeast quarter (NE 1/4), North half of the Southeast quarter (N 1/2 SE 1/4), East half of the Northwest quarter (E 1/2 NW 1/4) and the Northeast quarter of the Southwest quarter (NE 1/4 SW 1/4) of Section 28, all in Township Thirty-Two (32) North, Range Seven (7) West, Mount Diablo Base and Meridian, containing 978.2 acres, more or less;

Together with an easement sixty (60) feet in width, through, over and across the West half of the West half of Section 28, Township 32 North, Range 7 West, M.D.M., as set forth in that certain right-of-way deed between Clear Creek Lumber Co., a California corporation, and Frank M. Crawford and Vivian Crawford, his wife, dated December 29, 1964; and an easement sixty (60) feet in width, through, over and across Section 18 and Section 20, Township 32 North, Range 7 West, M.D.M., as set forth in that certain right-of-way deed between Northern California Lumber Co., a California corporation, and Frank M. Crawford and Vivian Crawford, his wife, dated December 29, 1964.

Grantors hereby remise, release and quitclaim unto the United States of America and its assigns forever, all of our right, title and interest in the banks, beds and waters of any springs and streams on or bordering the land hereby conveyed, and all interest in any roads, ways, strips or gores abutting or adjoining said land, and in any means of ingress or egress appurtenant thereto.

Grantors further remise, release and quitclaim unto the United States of America and its assigns forever, all our right, title and interest we may have in other lands lying within the exterior boundaries of Whiskeytown National Recreation Area by virtue of easements and rights-of-way, recorded or unrecorded.

Subject to existing recorded easements for rights-of-way to third parties, for public roads and highways, public utilities, pipelines and those reservations contained in patents issued by the United States of America;

Subject, also, to the rights of Sacramento Valley Television, Incorporated, as contained in the Lease from Grantors herein, recorded in Volume 1051 Page 472, of Lease Records of Shasta County, California.

TO HAVE AND TO HOLD the above granted and described premises, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, unto said UNITED STATES OF AMERICA and its assigns, forever.

The land is being acquired for the Department of the Interior, National Park Service.

IN WITNESS WHEREOF, we have executed this deed this 18 day of December, 1970.

Lois E. Tracy

Donald L. Tracy

Mary Margaret Schmidbauer

George A. Schmidbauer

William G. Crawford

Karen Crawford

STATE OF CALIFORNIA )
) ss
COUNTY OF MENDOCINO )

On this 18 day of DECEMBER, 1970, before me, LAURA GULLETT, a Notary Public in and for the County of MENDOCINO, State of California, residing therein, duly commissioned and sworn, personally appeared LOIS E. TRACY and husband, DONALD L. TRACY; MARY MARGARET SCHMIDBAUER and husband, GEORGE A. SCHMIDBAUER; and WILLIAM G. CRAWFORD and KAREN CRAWFORD, his wife, known to me to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same.

IN WITNESS WHEREOF I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

OFFICIAL SEAL
LAURA GULLETT
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
MENDOCINO COUNTY
My Commission Expires January 23, 1972

Notary Public in and for the County of MENDOCINO, State of California

17806

# Exhibit 4

COBi
CALIFORNIA OREGON BROADCASTING, Inc.
P.O. Box 1489 • 125 S. Fir St. • Medford, OR 97501
(541) 779-4400 or (541) 779-5555 or (800) 821-8108

***VIA CERTIFIED U.S. MAIL***

October 10, 2005

Jim F. Milestone
Park Superintendent
Whiskeytown Unit
Whiskeytown-Shasta-Trinity NRA
P. O. Box 188
Whiskeytown, CA 96095-0188

Dear Jim:

We are writing to formally notify you pursuant to paragraph 10 of our lease that California Oregon Broadcasting, Inc. ("COBi"), as successor in interest to Sacramento Valley Television, Inc., intends to exercise its option to renew its mountaintop lease of Shasta Bally for an additional 50-year term.

Under the terms of the lease, COBi is required to notify you of the initial rent COBi proposes to pay for the new rental term. To do this, we have calculated the present value of the lease based on the increase of the rent established in 1970 and using Consumer Price Index to determine the cumulative increase from that year to calendar year 2005. This calculation was based on a calculator from the Minneapolis Federal Reserve Bank that is available on the Internet. This resulted in a 401.6% cumulative increase.

We would therefore propose an annual rental for the period beginning September 1, 2006 of $12,538.66. This rate would be adjusted annually with a Consumer Price Index adjustment during the term of the lease.

We are providing you with this notification of our intent to renew earlier than required under the terms of the lease so that we can work with you to establish a rental rate and execute whatever documentation the National Park Service requires to confirm that rate in advance of August 1, 2006.

If you require any additional information to evaluate rental rates for the renewal term, please let us know.

For over 8½ decades, over the air radio and then TV have been a part of the American family, a democratic institution that has been available to every American citizen. We have considered it a serious responsibility and honor to assist in bringing free over-the-air radio and television to citizens in northern California. It has been honor to work with KRCR television and others to make sure that the citizens can have, at no charge, Amber Alerts in cases of missing children, weather alerts, flood alerts, status of the I-5 corridor, community activity information which creates a positive effect on everyone in the northern California viewing and listening area. Of course, a huge part of this has been our agreement with the National Park Service to provide this free information dissemination from a key coverage site at Shasta Bally.

Communications have changed over these many years, but what has remained constant is the fact that the most successful stations are those deeply rooted in their local communities, such as KRCR-TV and KIXE-TV. That has not changed. There is still no substitute for the immediacy of local radio, TV and mobile two-way radio services to provide necessary information to the public.

We look forward to working with you to continue to provide these vital services to northern California from this unique and important mountain top facility.

CALIFORNIA OREGON
BROADCASTING, INC.

Patricia C. Smullin, President

cc: KRCR-TV

# Exhibit 5

# United States Department of the Interior

## NATIONAL PARK SERVICE

WHISKEYTOWN NATIONAL RECREATION AREA
WHISKEYTOWN-SHASTA-TRINITY NATIONAL RECREATION AREA
P.O. BOX 188
WHISKEYTOWN, CA 96095-0188

IN REPLY REFER TO:

WHIS L 3027

November 1, 2005

Ms. Patsy Smullin
California Oregon Broadcasting, Inc.
P.O. Box 1489
Medford, OR 97501-0240

Dear Patsy:

Thank you for your letter dated October 10, 2005, regarding the California Oregon Broadcasting, Inc. ("COBi") lease on the summit of Shasta Bally at Whiskeytown National Recreation Area (the "Park"). We are looking forward to our meeting scheduled November 10, 2005, at Park Headquarters at 10:30 a.m. with you and your staff to discuss the next steps regarding continuation of your company's operations on Shasta Bally.

In your letter you indicate that COBi would like to renew the lease for an additional 50-year term following the expiration of the lease on July 31, 2006. The National Park Service ("NPS") cannot offer COBi a lease renewal. Paragraph 10 of the lease is stated as a "first right, privilege, and option to renew." (emphasis added) Applicable California law provides that such a term does not provide the lessee with an absolute right to renew. See, e.g., Falkenstein v. Popper, 183 P.2d 707, 709 (Cal. Dist. Ct. App. 1947) ("[T]he weight of authority holds that the use of such words as 'first privilege,' 'first right,' etc., do not give the lessee an absolute right to purchase or renew a lease.") Such a provision only grants a lessee a conditional right of first refusal if the landlord is willing to lease the premises again and does not wish to make any use of the property inconsistent with a future lease. See, e.g., Nelson v. Reisner, 331 P.2d 17, 20 (Cal. 1958) (en banc); Ablett v. Clauson, 272 P.2d 753, 755 (Cal. 1954) (en banc); Falkenstein, 183 P.2d at 709-10. Consequently, COBi only has a conditional right of first refusal under paragraph 10 of the current lease if the NPS determines that it is willing and able to lease the premises again.

Under applicable law and policy, the NPS cannot offer any party, including COBi, the opportunity to lease the area on Shasta Bally. Applicable NPS law and policy provides that the only means for authorizing use of NPS lands for communications facilities is an NPS right-of-way permit and that all types of authorizations previously issued for communications facilities will be converted to NPS right-of-way permits as those authorizations expire. Unlike leases, NPS right-of-way permits are discretionary and revocable documents issued for ten-year periods, and they do not convey or imply any interest in the land. The compensation terms in NPS right-of-way permits require the payment of fair market value for use and occupancy of the lands. Permittees are also required to reimburse the NPS for

administrative and other costs incurred by the NPS in processing the permit application, and for all costs incurred by the NPS for monitoring the construction, maintenance, operation, and termination of the permit and for the protection and rehabilitation of the lands involved. Compliance under the National Environmental Policy Act is required for the issuance of an NPS right-of-way permit.

Although we cannot offer you a renewal of the lease, the Park is ready to assist you and any other interested occupants of the site at Shasta Bally in the process of applying for NPS right-of-way permits. It is also my intention that your company, your clients, sub-lease holders, and the public do not experience an interruption of service during our negotiations to bring operations on Shasta Bally under the permit instruments and arrangements required by applicable law and policy.

Finally, we can provide for you a template of the NPS right-of-way permit utilized in the Pacific West Region of the NPS at our meeting on November 10, 2005, and from this the terms of the permit will be developed. Again, we look forward to meeting with you on November 10, and would like to commence work on developing the new permit as soon as possible. As mentioned in my letter to you dated September 12, 2005, I would appreciate a list of all the users that COBi has negotiated sub-leases with on Shasta Bally. Please feel free to contact me at 530-242-3460 or email me at Jim_Milestone@nps.gov.

Sincerely,

Jim F. Milestone
Superintendent

cc: Suzanne Boyce Carlson, PWR, Field Solicitor's Office

# Exhibit 6

United States Department of the Interior
NATIONAL PARK SERVICE
WHISKEYTOWN NATIONAL RECREATION AREA
WHISKEYTOWN-SHASTA-TRINITY NATIONAL RECREATION AREA
P.O. BOX 188
WHISKEYTOWN, CA 96095-0188

IN REPLY REFER TO:

WHIS L 3027

December 2, 2005

Ms. Patsy Smullin
California Oregon Broadcasting, Inc.
P.O. Box 1489
Medford, OR 97501-0240

Dear Patsy:

On November 10, 2005, we met to discuss the California Oregon Broadcasting, Inc. ("COBi") lease on the summit of Shasta Bally at Whiskeytown National Recreation Area (the "Park"). This lease is set to expire on July 31, 2006. We understand that COBi is of the view that it has a right under paragraph 10 of the lease to renew the lease for an additional 50-year term regardless of whether the National Park Service ("NPS") wishes to renew the lease. We concluded the meeting by stating that the Park and the Field Solicitor's Office would discuss COBi's position further and then respond to COBi.

We write now to reconfirm the position that we stated in our letter to you dated November 1, 2005 and that we further explained during our meeting on November 10, 2005. We do not agree with your legal conclusion regarding paragraph 10 of the lease. Under applicable California law, a term providing for the "first right, privilege and option to renew" such as that contained in paragraph 10, does not provide a lessee with an absolute and exclusive right to renew a lease. Rather, paragraph 10 only grants a conditional right of first refusal if the landlord is willing to lease the premises again and does not wish to make any use of the property inconsistent with a future lease.

We also write to reconfirm that under applicable law and policy, the NPS cannot offer COBi or any other party a lease for the area on Shasta Bally for communication purposes. The only means for authorizing use of NPS lands for communications facilities is an NPS right-of-way permit, and all types of authorizations previously issued for communications facilities must be converted to NPS right-of-way permits as those authorizations expire. During the meeting on November 10, 2005, we provided you with a template of the NPS right-of-way permit utilized in the Pacific West Region of the NPS. Many national telecommunications companies, such as Verizon, Nextel, and AT & T, have accepted these right-of-way permit terms. If COBi wishes to continue operations on Shasta Bally beyond the expiration of the current lease, it will need to agree to begin the process for issuance of a right-of-way permit soon in order to avoid interruption of operations.

Based on our discussions on November 10, we recognize that COBi is considering litigation over the meaning of paragraph 10. We would very much like to avoid litigation, and we have expended a considerable amount of time to apprise COBi of the best way to provide for a smooth transition upon the expiration of the lease on July 31, 2006. Accordingly, we are prepared to begin working with COBi in the NPS right-of-way permitting process. The first step in the process is to apply for an NPS right-of-way permit using standard application form SF 299 which we have enclosed for your convenience.

In order to provide for a smooth transition, we need to hear from you by early January regarding whether you are going to proceed with the NPS right-of-way permitting process. Beginning that process soon will allow time for processing the application, performing the necessary analysis, including analysis under the National Environmental Policy Act, and completing the right-of-way permit. We ask for your response by January 6, 2006.

During the November 10 meeting, we also stated NPS policy that each occupant of the site on Shasta Bally would need to have its own right-of-way permit. Consequently, each of COBi's sublessees will also need to apply for right-of-way permits if they would like to remain at the site beyond expiration of the lease. While the NPS is willing to provide the sublessees with the information and documents necessary to begin the right-of-way permitting process, COBi stated at the November 10 meeting that it would consider litigation under a theory of tortious interference with contract rights if the NPS contacted COBi's sublessees. As a federal agency, the NPS is immune from suit under this state tort law theory. Although we will not be contacting your sublessees directly at this time, we urge you as the sublessor to contact them regarding the NPS permitting process so that they can make a timely decision regarding whether they would like to apply for NPS right-of-way permits as well. Finally, under applicable California law, the NPS as lessor has no legal obligation to COBi's sublessees upon expiration of the lease on July 31, 2006. Nevertheless, we are willing to offer COBi's sublessees the same opportunity to apply for NPS right-of-way permits.

We look forward to hearing from you by January 6, 2006. Although we cannot offer you a renewal of the lease, the Park is ready to assist you and any other interested occupants of the site at Shasta Bally in the process of applying for NPS right-of-way permits. In the meantime, it is also my desire that our staffs continue to work together under the terms of the current lease until its expiration. If you have any questions or require any further information, please feel free to contact me at 530-242-3460 or email me at Jim_Milestone@nps.gov.

Sincerely,

Jim F. Milestone

Jim F. Milestone
Superintendent

Enclosure
cc: Suzanne Boyce Carlson, PWR, Field Solicitor's Office

STANDARD FORM 299 (1/99)
Prescribed by DOI/USDA/DOT
P.L. 96-487 and Federal
Register Notice 5-22-95

FORM APPROVED
OMB NO. 1004-0060
Expires: December 31, 2001

# APPLICATION FOR TRANSPORTATION AND UTILITY SYSTEMS AND FACILITIES ON FEDERAL LANDS

FOR AGENCY USE ONLY

NOTE: Before completing and filing the application, the applicant should completely review this package and schedule a preapplication meeting with representatives of the agency responsible for processing the application. Each agency may have specific and unique requirements to be met in preparing and processing the application. Many times, with the help of the agency representative, the application can be completed at the preapplication meeting.

Application Number

Date Filed

1. Name and address of applicant *(include zip code)*

2. Name, title, and address of authorized agent if different from item 1 *(include zip code)*

3. TELEPHONE *(area code)*

Applicant

Authorized Agent

4. As applicant are you? *(check one)*
   a. ____ Individual
   b. ____ Corporation*
   c. ____ Partnership/Association*
   d. ____ State Government/State Agency
   e. ____ Local Government
   f. ____ Federal Agency

** If checked, complete supplemental page*

5. Specify what application is for: *(check one)*
   a. _____ New authorization
   b. _____ Renewing existing authorization No.
   c. _____ Amend existing authorization No.
   d. _____ Assign existing authorization No.
   e. _____ Existing use for which no authorization has been received *
   f. _____ Other*

** If checked, provide details under item 7*

6. If an individual, or partnership are you a citizen(s) of the United States? ____ Yes ____ No

7. Project description (describe in detail): (a) Type of system or facility, *(e.g., canal, pipeline, road)*; (b) related structures and facilities; (c) physical specifications *(Length, width, grading, etc.)*; (d) term of years needed: (e) time of year of use or operation; (f) Volume or amount of product to be transported; (g) duration and timing of construction; and (h) temporary work areas needed for construction *(Attach additional sheets, if additional space is needed.)*

8. Attach a map covering area and show location of project proposal

9. State or Local government approval: _____ Attached _____ Applied for _____ Not Required

10. Nonreturnable application fee: _____ Attached _____ Not required

11. Does project cross international boundary or affect international waterways? _____ Yes _____ No *(If "yes," indicate on map)*

12. Give statement of your technical and financial capability to construct, operate, maintain, and terminate system for which authorization is being requested.

(Continued on reverse)

This form is authorized for local reproductio

13a. Describe other reasonable alternative routes and modes considered.

b. Why were these alternatives not selected?

c. Give explanation as to why it is necessary to cross Federal Lands.

14. List authorizations and pending applications filed for similar projects which may provide information to the authorizing agency. *(Specify number, date, code, or name)*

15. Provide statement of need for project, including the economic feasibility and items such as: (a) cost of proposal (construction, operation, and maintenance); (b) estimated cost of next best alternative; and (c) expected public benefits.

16. Describe probable effects on the population in the area, including the social and economic aspects, and the rural lifestyles.

17. Describe likely environmental effects that the proposed project will have on: (a) air quality; (b) visual impact; (c) surface and ground water quality and quantity; (d) the control or structural change on any stream or other body of water; (e) existing noise levels; and (f) the surface of the land, including vegetation, permafrost, soil, and soil stability.

18. Describe the probable effects that the proposed project will have on (a) populations of fish, plantlife, wildlife, and marine life, including threatened and endangered species; and (b) marine mammals, including hunting, capturing, collecting, or killing these animals.

19. State whether any hazardous material, as defined in this paragraph, will be used, produced, transported or stored on or within the right-of-way or any of the right-of-way facilities, or used in the construction, operation, maintenance or termination of the right-of-way or any of its facilities. "Hazardous material" means any substance, pollutant or contaminant that is listed as hazardous under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. 9601 et seq., and its regulations. The definition of hazardous substances under CERCLA includes any "hazardous waste" as defined in the Resource Conservation and Recovery Act of 1976 (RCRA), as amended, 42 U.S.C. 6901 et seq., and its regulations. The term hazardous materials also includes any nuclear or byproduct material as defined by the Atomic Energy Act of 1954, as amended, 42 U.S.C. 2011 et seq. The term does not include petroleum, including crude oil or any fraction thereof that is not otherwise specifically listed or designated as a hazardous substance under CERCIA Section 101(14), 42 U.S.C. 9601(14), nor does the term include natural gas.

20. Name all the Department(s)/Agency(ies) where this application is being filed.

I HEREBY CERTIFY, That I am of legal age and authorized to do business in the State and that I have personally examined the information contained in the application and believe that the information submitted is correct to the best of my knowledge.

| Signature of Applicant | Date |
|---|---|
| | |

Title 18, U.S.C. Section 1001, makes it a crime for any person knowingly and willfully to make to any department or agency of the United States any false, fictitious, or fraudulent statements or representations as to any matter within its jurisdiction.

SUPPLEMENTAL

| NOTE: The responsible agency(ies) will provide instructions | CHECK APPROPRIATE BLOCK | |
|---|---|---|
| I - PRIVATE CORPORATIONS | ATTACHED | FILED* |
| a. Articles of Incorporation | | |
| b. Corporation Bylaws | | |
| c. A certification from the State showing the corporation is in good standing and is entitled to operate within the State | | |
| c. Copy of resolution authorizing filing | | |
| e. The name and address of each shareholder owning 3 percent or more of the shares, together with the number and percentage of any class of voting shares of the entity which such shareholder is authorized to vote and the name and address of each affiliate of the entity together with, in the case of an affiliate controlled by the entity, the number of shares and the percentage of any class of voting stock of that affiliate owned, directly or indirectly, by that entity, and in the case of an affiliate which controls that entity, the number of shares and the percentage of any class of voting stock of that entity owned, directly or indirectly, by the affiliate. | | |
| f. If application is for an oil or gas pipeline, describe any related right-of-way or temporary use permit applications, and identify previous applications. | | |
| g. If application is for an oil and gas pipeline, identify all Federal lands by agency impacted by proposal. | | |
| II - PUBLIC CORPORATIONS | | |
| a. Copy of law forming corporation | | |
| b. Proof of organization | | |
| c. Copy of Bylaws | | |
| d. Copy of resolution authorizing filing | | |
| e. If application is for an oil or gas pipeline, provide information required by item "I-f" and "I-g" above. | | |
| III - PARTNERSHIP OR OTHER UNINCORPORATED ENTITY | | |
| a. Articles of association, if any | | |
| b. If one partner is authorized to sign, resolution authorizing action is | | |
| c. Name and address of each participant, partner, association, or other | | |
| d. If application is for an oil or gas pipeline, provide information required by item "I-f" and "I-g" above. | | |

* If the required information is already filed with the agency processing this application and is current, check block entitled "Filed." Provide the file identification information *(e.g., number, date, code, name)*. If not on file or current, attach the requested information.

NOTICE

The Privacy Act of 1974 provides that you be furnished the following information in connection with information required by this application for an authorization.

AUTHORITY: 16 U.S.C. 310; 5 U.S.C. 301.

PRINCIPAL PURPOSE: The information is to be used to process the application.

ROUTINE USES: (1) The processing of the applicant's request for an authorization. (2) Documentation for public information. (3) Transfer to appropriate Federal agencies when concurrence is required prior to granting a right in public lands or resources. (4)(5) Information from the record and/or the record will be transferred to appropriate Federal, State, local or foreign agencies, when relevant to civil, criminal or regulatory investigations or prosecutions.

EFFECT OF NOT PROVIDING INFORMATION: Disclosure of the information is voluntary. If all the information is not provided, the application may be rejected.

DATA COLLECTION STATEMENT

The Federal agencies collect this information from applicants requesting right-of-way, permit, license, lease, or certification for the use of Federal lands.

The Federal agencies use this information to evaluate the applicant's proposal.

The public is obligated to submit this form if they wish to obtain permission to use Federal lands.

A reproducible copy of this form may be obtained from the Bureau of Land Management, Division of Lands, 1620 L. Street, Room 204, Washington, D.C. 20036.

AND FACILITIES ON FEDERAL LANDS

GENERAL INFORMATION
*ALASKA NATIONAL INTEREST LANDS*

This application will be used when applying for a right-of-way, permit, license, lease, or certificate for the use of Federal lands which lie within conservation system units and National Recreation or Conservation Areas as defined in the Alaska National Interest lands Conservation Act. Conservation system units include the National Park System, National Wildlife Refuge System, National Wild and Scenic Rivers System, National Trails System, National Wilderness Preservation System, and National Forest Monuments.

Transportation and utility systems and facility uses for which the application may be used are:

1. Canals, ditches, flumes, laterals, pipes, pipelines, tunnels, and other systems for the transportation of water.
2. Pipelines and other systems for the transportation of liquids other than water, including oil, natural gas, synthetic liquid and gaseous fuels, and any refined product produced therefrom.
3. Pipelines, slurry and emulsion systems, and conveyor belts for transportation of solid materials.
4. Systems for the transmission and distribution of electric energy.
5. Systems for transmission or reception of radio, television, telephone, telegraph, and

Department of Transportation
Federal Aviation Administration
Alaska Region AAL-4, 222 West 7th Ave., Box 14
Anchorage, Alaska 99513-7587
Telephone: (907) 271-5285

NOTE - The Department of Transportation has established the above central filing point for agencies within that Department. Affected agencies are: Federal Aviation Administration (FAA), Coast Guard (USCG), Federal Highway Administration (FHWA), Federal Railroad Administration (FRA).

OTHER THAN ALASKA NATIONAL INTEREST LANDS

Use of this form is not limited to National Interest Conservation Lands of Alaska.

Individual department/agencies may authorize the use of this form by applicants for transportation and utility systems and facilities on other Federal lands outside those areas described above.

For proposals located outside of Alaska, applications will be filed at the local agency office or at a location specified by the responsible Federal agency.

SPECIFIC INSTRUCTIONS
*(Items not listed are self-explanatory)*

*Item*

7 Attach preliminary site and facility construction plans. The responsible agency will provide instructions whenever specific plans are required.

8 Generally, the map must show the section(s), township(s), and range(s) within which the project is to be located. Show the proposed location of the project on the map as accurately as possible. Some agencies require detailed survey maps. The responsible agency will provide additional instructions.

9 10, and 12 - The responsible agency will provide additional instructions.

13 Providing information on alternate routes and modes in as much detail as possible, discussing why certain routes or modes were rejected and why it is necessary to cross Federal lands will assist the agency(ies) in processing your application and reaching a final decision. Include only reasonable alternate routes and modes as related to current technology and economics.

14 The responsible agency will provide instructions.

15 Generally, a simple statement of the purpose of the proposal will be sufficient. However, major proposals located in critical or sensitive areas may require a full analysis with additional specific information. The responsible agency will provide additional instructions.

16 through 19 - Providing this information in as much detail as possible will assist the Federal agency(ies) in processing the application and reaching a decision. When completing these items, you should use a sound judgment in furnishing relevant information. Fore example, if the project is not near a stream or other body of water, do not address this subject. The responsible agency will provide additional instructions.

Application must be signed by the applicant or applicant's authorized representative.

Public reporting burden for this form is estimated to vary from 30 minutes to 25 hours per response, with an average of 2 hours per response, including the time for reviewing instructions, gathering and maintaining data, and completing and reviewing the form. Direct comments regarding the burden estimate or any other aspect of this form to U.S. Debarment of the Interior, Bureau of Land Management, (Alternate) Bureau Clearance Officer, (WO-873), 1849 C Street, N.W., Washington, D.C. 20240, and the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, D.C. 20503

If additional space is needed to complete any item, please put the information on a separate sheet of paper and identify it as "Continuation of Item".