No. 06-116
(Judge Firestone)

---

CALIFORNIA OREGON BROADCASTING, INC.,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

---

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

MARK A. MELNICK
Assistant Director

OF COUNSEL:

PAULA LEE
Office of the Solicitor
Department of the Interior
Pacific Southwest Region
1111 Jackson Street, Ste. 735
Oakland, California 94607

MARLA T. CONNEELY
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street
Washington, D.C. 20530
Tel: (202) 307-1011
Fax: (202) 307-0972

June 20, 2006

Attorneys for Defendant

TABLE OF CONTENTS

PAGE

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Defendant's Brief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement Of The Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement Of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature Of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Statement Of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Summary Of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. COBI Fails To State A Claim That The Government Breached The Term Of The Lease . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

A. There Is A Critical Distinction Between A Unilateral Option To Renew And A Conditional Right Of First Refusal . . . . . . . . . . . . . . . . . . 7

B. Consistent With The Rules Of Contract Interpretation, The Lease Only Provides A Right Of First Refusal, Not A Unilateral Option To Renew . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

1. Federal Courts Have Interpreted The Term "First" And Similar Provisions As Creating A Conditional Right Of First Refusal . . 10

2. Under California Law, The Terms "First Privilege" And "First Right" Give The Lessee A First Refusal To Lease, Conditioned On The Lessor's Decision To Lease The Property Again . . . . . . . . . 13

C. COBI Fails To Allege That The Government Decided To Release The Premises, As Required By The Conditional Right Of First Refusal In The Lease . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

III. Renewal Of The Lease Is Prohibited By Applicable Law And NPS Regulations And Policies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV. Plaintiff Seeks Damages That Are Speculative, Remote, And Unforeseeable . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## TABLE OF AUTHORITIES

CASES PAGE(S)

Ablett v. Clauson,
272 P.2d 753 (Cal. 1954) . . . . . 13, 14, 18

Anderson v. Liberty Lobby, Inc.,
77 U.S. 242 (1986) . . . . . 5, 6

Assurance Co. v. United States,
813 F.2d 1202 (Fed. Cir. 1987) . . . . . 22

Blake Constr. Co., Inc. v. United States,
987 F.2d 743 (Fed. Cir. 1993) . . . . . 9

Bristol-Myers Squibb v. Ikon Office Solutions,
295 F.3d 680 (7th Cir. 2002) . . . . . 8

Buddenberg v. Welch,
185 N.E. 865 (Ind. Ct. App. 1933) . . . . . 15, 17

CCM Corp. v. United States,
15 Cl. Ct 670, 671-72 (1988) . . . . . 22

Cloverdale v. Littlefield,
133 N.E. 565 (Mass. 1921) . . . . . 15, 17

Commonwealth of Kentucky Nat'l Resources Envtl. Prot. Cabinet v. United States,
27 Fed. Cl. 173 (1992) . . . . . 7

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . 5

Cont'l Collection & Disposal, Inc. v. United States,
29 Fed. Cl. 644 (1993) . . . . . 10

Czapp v. Cox,
445 N.W.2d 218 (Mich. Ct. App. 1989) . . . . . 15

Essen Mall Properties v. United States,
21 Cl. Ct 430 (1990) . . . . . 22

Giove v. Dep't of Transportation,
230 F.3d 1333 (Fed. Cir. 2000) . . . . . . . . . . 6

Gould, Inc. v. United States,
935 F.2d 1271 (Fed. Cir. 1991) . . . . . . . . . . 9, 10

Gov't Sys. Advisors v. United States,
847 F.2d 811 (Fed. Cir. 1988) . . . . . . . . . . 6

Gulf Oil Corp. v. Chiodo,
804 F.2d 284 (4th Cir. 1986) . . . . . . . . . . 13

Hill v. Prior,
106 A. 641 (N.H. 1919) . . . . . . . . . . 15, 17

Holloway v. Schmidt,
33 Misc. 747 . . . . . . . . . . 15, 17

Keydata Corp. v. United States,
205 Ct. Cl. 467 (Ct. Cl. 1974) . . . . . . . . . . 10

Kone v. Consolidated Rail Corporation, et al.,
1988 U.S. Dist. LEXIS 14400 (E.D. Penn. 1988) . . . . . . . . . . 12

Landowners Co. v. Pendry,
100 P.2d 632 (Kan. 1940) . . . . . . . . . . 15, 17, 19

London v. Joslovitz,
279 A.D. 252, 110 N.Y.S.2d 56 (1952) . . . . . . . . . . 16, 17

Luxenberg v. Mayfair Extension, Inc.,
382 F.2d 475 (D.C. Cir. 1967) . . . . . . . . . . 11, 12

Malissa Co., Inc. v. United States,
11 Cl. Ct. 389 (1986) . . . . . . . . . . 23

Miller v. LaSea Broadcasting, Inc.,
87 F.3d 224 (7th Cir. 1996) . . . . . . . . . . 9

Mingus Constructors, Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . 5

NVT Technologies, Inc. v. United States,
370 F.3d 1153 (Fed. Cir. 2004) . . . . . . . . . . 10, 17

Nelson v. Reisner,
331 P.2d 17 (Cal. 1958) . . . . . . . . . . 13, 14

Nelson v. Reisner
(1958) 51 C.2d 161, 331 P.2d 17 . . . . . . . . . . 8, 18

Perez v. United States,
156 F.3d 1366 (Fed. Cir. 1998) . . . . . . . . . . 5

Pincus v. Pabst Brewing Co.,
893 F.2d 1544 (7th Cir. 1990) . . . . . . . . . . 9

Prudential Ins. Of America v. United States,
801 F.2d 1295, 1298 (Aug. 29, 1986) . . . . . . . . . . 10

Ponder v. United States,
117 F.3d 549 (Fed. Cir. 1997) . . . . . . . . . . 5

Ralph Larson & Son, Inc. v. United States,
17 Cl. Ct. 39, 42 (1989) . . . . . . . . . . 5, 6

Rhen v. United States,
17 Cl. Ct. 140 (1989) . . . . . . . . . . 23

San Carlos Irrigation & Drainage Dist. v. United States,
111 F.3d 1557 (Fed. Cir. 1997) . . . . . . . . . . 22

Shell Oil Co.v. Blumberg,
154 F.2d 251 (5th Cir. 1946) . . . . . . . . . . 13

Shell Oil Co. v. Prescott,
398 F.2d 592 (6th Cir. 1968) . . . . . . . . . . 13

Sinclair Refining Co. v. Clay,
102 F.Supp. 732 (N.D. Oh. 1951) . . . . . . . . . . 12

Streicher v. Heimburge,
205 Cal. 675 (1928) . . . . . . . . . . 18

Varilease Technology Group, Inc. v. United States,
289 F.3d 795 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## STATUTES

16 U.S.C. § 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CALIFORNIA OREGON BROADCASTING, INC., | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 06-116 (Judge Firestone) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Pursuant to Rules 12(b)(6) and 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests this Court to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. Alternatively, to the extent resolution of this motion to dismiss requires the Court to interpret the lease that is the subject of this action, then, pursuant to RCFC 56, the United States respectfully requests that the Court enter judgment in favor of the United States as a matter of law. See Varilease Technology Group, Inc. v. United States, 289 F.3d 795, 798 (Fed. Cir. 2002) (contract interpretation is a question of law generally amenable to summary judgment). In support of this motion, the United States relies upon the following brief, the attached exhibits, our proposed statement of uncontroverted facts, and the complaint.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUES

1. Whether plaintiff has failed to state a claim of anticipatory breach of the lease.

2. Alternatively, whether the United States is entitled to judgment as a matter of law.

STATEMENT OF THE CASE

I. Nature Of The Case

California Oregon Broadcasting, Inc. ("COBI") claims that it has a unilateral right to renew a lease with the United States for a large telecommunications site located on the summit of Shasta Bally, the highest peak in Whiskeytown National Recreation Area, a unit of the National Park Service ("NPS"). The primary issue is whether paragraph 10 of the lease provides COBI with a first right of refusal if the Government continues to lease the area at the end of the lease term, or whether the lease provides COBI with an absolute right to renew the lease for an additional fifty years.

The United States acquired the land at the summit in 1970 subject to the lease, which ends on July 31, 2006. In 2005, the NPS notified COBI that, under applicable law, the NPS has discretion regarding lease renewal, and that the law and NPS regulations and policies prohibited NPS from continuing to lease the land at the end of the lease term, and, thus, prohibited any renewal of the lease.

COBI seeks a declaration from this Court that the lease provides COBI a unilateral right to extend the lease for an additional fifty years at a rent to be fixed pursuant to the terms described in the lease. COBI further seeks a declaration that, pursuant the terms of the lease, the NPS is required to negotiate in good faith with COBI regarding the rental amount to be charged

on renewal. Moreover, COBI alleges that it has incurred in excess of $1,000,000 in damages as a result of the United States' alleged anticipatory breach of the lease.

II. Statement Of Facts[1]

In October 1970, Sacramento Valley Television, Inc. ("SVTI") entered into the lease with several individuals under which SVTI leased certain land from Lois Tracy. Compl. ¶ 4. The United States acquired the land at the summit in or about December 1970, subject to the lease. Compl. ¶ 7. COBi eventually succeeded SVTI's interest in the leasehold and the lease. Compl. ¶ 8. The lease is due to expire on July 31, 2006. Compl. ¶ 5.

Paragraph 4 of the lease provides for an annual rental of $2,500. Compl. Exh. A. COBI currently subleases the property to various radio and television stations, cellular companies, and other communications-related entities, and is scheduled to receive annual rents from these entities for the current year totaling approximately $140,000. Compl. ¶ 9.

Paragraph 10 of the lease provides:

> 10. OPTION. At the expiration of the term hereof, Lessee shall have the first right, privilege and option to renew this Lease for a period of fifty (50) years at a rental to be fixed by agreement between said parties and/or their successors in interest. Within ninety (90) days prior to the expiration of said Lease, Lessee shall notify Lessor, in writing, of its election to exercise its option to extend said Lease for the additional term, and shall notify Lessor of the rental which it is willing to pay for said extended term. If said rental is not acceptable to Lessor or her successors or assigns, then within thirty-five (35) days after the receipt of such written notice, the amount of rental shall be submitted to arbitration. Lessor shall appoint one arbitrator and Lessee shall appoint one arbitrator, and if said arbitrators can not agree, then they shall jointly appoint a third arbitrator, in which event the decision of a majority of the arbitrators shall be conclusive upon Lessor and Lessee and shall be rendered and determined prior to August 1, 2006. The cost of such arbitration shall be borne equally by Lessor and Lessee.

[1] For purposes of this motion only, the United States accepts as true the factual allegations as set forth in the complaint.

Compl. Exh. A.

On October 10, 2005, COBI notified NPS in writing that it intended to renew the lease. Compl.¶ 10. COBI proposed an annual rent of $12,538.66, beginning September 1, 2006. Id. On November 1, 2005, NPS notified COBI that it would not renew the lease and that under "applicable law and policy, the NPS cannot offer any party, including COBI, the opportunity to lease the area on Shasta Bally." Compl. ¶ 11. NPS informed COBI that "the only means for authorizing use of NPS lands for communications facilities is an NPS right-of-way permit." Pl. Mot. S.J. Ex. 5 at 1.

NPS has spent a considerable amount of time apprising COBI of how parties on the site could continue their operations under NPS right-of-way permits and how best to provide a smooth transition to NPS right-of-way permits upon lease expiration. In its letter of November 1, 2005, NPS explained key features of NPS right-of-way permits. Id. On December 2, 2005, NPS explained that it was prepared to begin working with COBI with the right-of-way permitting process and that the first step is the submission of a standard application form, SF 299, which NPS enclosed with the letter for COBI's convenience. Pl. Mot. S.J. Ex. 6. On January 12, 2006, NPS provided COBI with a detailed discussion addressing COBI's questions concerning the permitting process. See Exhibit 1, attached hereto.

## SUMMARY OF ARGUMENT

COBI's has not identified, and cannot identify, any provision or provisions of the lease that have been breached by the United States. Indeed, NPS's actions are explicitly allowed by the plain language of the lease. Moreover, even if COBI's claims had any merit, which they do not, COBI would not be entitled to the relief it seeks. COBI is not entitled to damages of anticipated lost profits because those damages are speculative, remote and were unforeseeable at

the time the lease was executed. COBI also could not be granted any declaratory relief because such relief is outside the authority of this Court.

## ARGUMENT

### I. Legal Standards

A motion to dismiss pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate when the plaintiff's alleged facts do not entitle him to a remedy. Perez v. United States, 156 F.3d 1366, 1370 (Fed. Cir. 1998). Dismissal pursuant to RCFC 12(b)(6) is proper only when it is apparent that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Ponder v. United States, 117 F.3d 549, 552 (Fed. Cir. 1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). A case dismissed pursuant to RCFC 12(b)(6) is considered a dismissal on the merits. Id. at 552-53.

Summary judgment may be granted where there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987); Ralph Larson & Son, Inc. v. United States, 17 Cl. Ct. 39, 42 (1989).

A court may consider a motion for summary judgment in stages. The initial inquiry should be whether the movant has presented an adequate legal basis for its motion. E.g., Ralph Larson, 17 Cl. Ct. at 43. If the legal support is insufficient, then the inquiry is at an end and the motion must be denied. E.g., Anderson, 477 U.S. at 250 ("There is no requirement that the trial judge make findings of fact."). Once a movant has established an adequate legal basis for its motion, the Court must consider whether the opposing party has identified any genuine issues of material fact. The first step is to determine whether the issues raised are truly factual issues, or are issues of law. The second step is to determine what subset of the truly factual issues are

material to the decision of the case. The third step is to examine the evidence presented by the parties to determine whether there is any genuine issue concerning any material factual issue. Ralph Larson, 17 Cl. Ct. at 43 (describing three steps); accord Anderson, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

Contract interpretation is a question of law. Giove v. Dep't of Transportation, 230 F.3d 1333, 1340 (Fed. Cir. 2000). Accordingly, when there is a dispute between the parties concerning contract interpretation, it is appropriate to resolve this legal dispute first in order to determine whether the moving party has an adequate basis for its motion, and then to determine what facts are material to the proper legal standard. See Ralph Larson, 17 Cl. Ct. at 43-45. Where no facts material to the proper interpretation of the contract are disputed, the claim at issue may appropriately be decided by summary judgment. Anderson, 477 U.S. at 248; Gov't Sys. Advisors, Inc. v. United States, 847 F.2d 811, 813 (Fed. Cir. 1988) (decision concerning contract interpretation precludes need to address factual issues raised by the parties where those factual disputes were not material to the legal standard created by the proper contract interpretation).

## II. COBI Fails To State A Claim That The Government Breached The Terms Of The Lease

In order to state a claim for breach of a lease, a plaintiff must establish the following: (1) a valid lease; (2) an obligation or duty arising out of the lease; (3) a breach of that duty; and (4) damages caused by the lessor's breach. Commonwealth of Kentucky Nat'l Resources Envtl. Prot. Cabinet v. United States, 27 Fed. Cl. 173, 178 (1992). Here, COBI alleges that it has a unilateral right to extend the lease, and NPS's refusal to renew the lease for an additional fifty

years was an anticipatory repudiation of the lease. Compl. ¶¶ 13, 14. COBI's claims are without merit and completely unsupported by the plain language of the lease.

A. There Is A Critical Distinction Between A Unilateral Option to Renew and A Conditional Right of First Refusal

COBI has mistakenly interpreted paragraph 10 of the lease as a unilateral option to renew the lease, rather than as a conditional right of first refusal. There is a critical distinction between a conditional right of first refusal and a unilateral option:

> Before proceeding with the discussion of Option Contracts, it is desirable to consider certain other transactions that are often mistakenly referred to as Options. These transactions (which this treatise uses under the generic caption "right of first refusal") are closely related to the purposes of option contracts and yet are very dissimilar in the legal relations of the parties who make them. To include them under the heading "Option Contracts," as if they were merely a special variety thereof, is not only confusing to courts and anyone who contracts but also is logically inaccurate. They are not offers and create no power of acceptance. These transactions create a right, a contractual right to "preempt" another. Some further confusion stems from the diverse and inconsistent customs of describing this right. Notwithstanding, the emphasis should be on the word "right" and "Right of First Refusal" or, perhaps, "Preemptive Right" is the most apt description.

3 Eric Mills Holmes, Corbin on Contracts § 11.3 (2005).[2]

A right of first refusal "is often given in connection with the sale or lease of real estate, but can be a part of any contract." Bristol-Myers Squibb Co. v. Ikon Office Solutions, Inc., 295

[2] See also, 1 Witkin, Summary of California Law, Contracts, § 178 (10th ed. 2005): "A type of agreement loosely termed an option to purchase, but distinguishable, is the preemption agreement, or right of first opportunity to purchase. (See Nelson v. Reisner (1958) 51 Cal.2d 161, 165, 331 P.2d 17.) The language of preemption may be "first opportunity," "first right," "first privilege," "first refusal," etc., but regardless of the language employed, the distinction is that an option gives the holder power to compel a sale whether or not the owner wants to sell, while the preemption agreement merely gives the holder the first right to buy if the owner wants to sell."

F.3d 680, 685 (7th Cir. 2002). Accordingly, the principles that apply to options and rights for first refusal in the sale of real estate are guidance for options and rights of first refusal in general:

> [T]he holder of an option, say on a piece of land, has the power to make a contract solely by calling upon the owner to perform and accepting the owner's title. The holder of an option can compel a sale by an unwilling owner. The holder of a right of first refusal on a piece of land only has the right to receive an offer to buy the land. Generally, it is a contractual right to preempt another because the right is conditional on the owner's decision that an offer from a third party is acceptable. More specifically, the right is subject to an agreed condition precedent, typically the owner's receipt of an offer from a third party and the owner's good-faith decision to accept it. Only then can the holder of the right decide whether or not to create a contract on the same terms that the owner is willing to accept from the third party. More precisely, the occurrence of these events (owner's receipt of an offer and the good-faith decision to accept it) satisfies the condition precedent, which "triggers" the right of first refusal that "ripens" into an option. The option then can be exercised like any other option contract. The owner must notify the right-holder of the owner's receipt of the third-party offer and of the decision to accept it. Failure to do so entitles the holder to legal and equitable remedies (as in the case of an option contract) such as damages or specific performance.

Corbin on Contracts at § 11.3.

Several courts have explained the difference between option contracts and rights of first refusal. In Pincus v. Pabst Brewing Co., 893 F.2d 1544, 1549 (7th Cir. 1990), the court explained (applying Wisconsin law):

> As this case demonstrates, a binding right of first refusal can be a powerful instrument. Yet a right of first refusal to buy something is more contingent than an option to buy the same thing, and is therefore less valuable. Unlike the holder of an option, the holder of a right of first refusal cannot force an unwilling owner to sell to anyone. Instead he has right to buy, but "only if the seller decides to sell." [Citations omitted.] A right of first refusal is thus often referred to as a preemptive right; if a sale is in the offing, the holder may preempt all other potential buyers.

Similarly, in Miller v. LaSea Broadcasting, Inc., 87 F.3d 224, 226 (7th Cir. 1996), the court stated:

> A right of first refusal is the weakest of options; technically it is not an option at all, because it does not require the grantor to offer the property subject to it for sale, ever. [Citations omitted.] All it entitles the holder to do is to match an offer from a third party should the grantor of the option be minded to accept that offer. It is thus merely a preemptive right, although it becomes an option when the grantor decides to sell on the terms offered by the third party; at that point the holder of the option has the right to buy the property, a right that is a true option.

Here, the plain language of the lease provides COBI a right of first refusal, not an absolute option to renew, as COBI claims.

### B. Consistent With The Rules Of Contract Interpretation, The Lease Only Provides A Right Of First Refusal, Not A Unilateral Option To Renew

The interpretation of a Government contract is a matter of law for this Court to decide. Blake Constr. Co., Inc. v. United States, 987 F.2d 743, 746 (Fed. Cir. 1993). Contract interpretation begins with the plain language of the agreement. Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991). When interpreting the language of a contract, a court gives reasonable meaning to all parts of the contract and does not render any portion meaningless, or interpret any provision so as to create a conflict with another provision. NVT Technologies, Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004); Cont'l Collection & Disposal, Inc. v. United States, 29 Fed. Cl. 644, 649 (1993). A contract should be viewed in its entirety and given the plain meaning which would be derived by a reasonably intelligent person acquainted with the contemporaneous circumstances. Id.

Where the United States is one of the original parties to a lease, the United States Court of Appeals for the Federal Circuit and this Court have held that Federal law will apply to

interpret that lease. In Prudential Insurance Co. of Am. v. United States, the Federal Circuit stated, "It is well settled that contracts to which the government is a party – and though a lease may concern and convey a property interest it is also very much a contract – are normally governed by [F]ederal law, not by the law of the state where they are made or performed." Prudential, 801 F.2d 1295, 1298 (Fed. Cir. 1986); see also Keydata Corp. v. United States, 504 F.2d 1115 (Ct. Cl. 1974). However, the Prudential court further added, "[t]o the extent existing [F]ederal law is not determinative of the issue and permits an area of choice between the merits of competing principles, the best in modern decision and discussion, including the general principles of contract and landlord-tenant law, should be taken into account." Prudential, 801 F.2d at 1298.

Here, the NPS was not an original party to the lease; rather, the lease had been executed prior to the NPS acquiring the land. (Complaint, ¶ 7.) Nonetheless, whether Federal law or California law applies, the result is the same: COBI's claims must fail because the lease only provides COBI a conditional right of first refusal, and not a unilateral option to renew the lease. Accordingly, pursuant to Federal law and California law (see Argument section II.B.2, infra), COBI has a conditional right to renew only if NPS determines it is willing and able to renew the lease.

1. Federal Courts Have Interpreted The Term "First" And Similar Provisions As Creating A Conditional Right Of First Refusal

Federal courts have interpreted first right of refusal provisions as conditional upon the occurrence of the condition precedent, and have interpreted the term "first" as indicating a conditional right of first refusal, rather than an unilateral option. For example, in Luxenberg v. Mayfair Extension, Inc., 382 F.2d 475 (D.C. Cir. 1967), the lessee was accorded the exclusive

right to conduct a food store on the premises until the present building was demolished for reconstruction or replacement. The lease specified that "Upon demolition of the present premises and upon completion of replacement facilities," the lessee was to have "the first option to lease the food market and [g]rocery facilities in said replacement facilities. . . ." Id. at 476 (emphasis added). Upon a second five-year extension of the lease, it was expressly provided that the lessee's first option to lease was to remain in full force. With regard to the amount of rent, the lessee was to pay an amount equal to a bona fide offer which the lessor might receive from a prospective tenant, and the lessee was to have thirty days after receipt of notice of any such terms to elect to exercise the option to lease.

The lessee subsequently brought an action for anticipatory breach of contract after the structure was demolished and the lessor had entered into a lease with a different prospective tenant for the same space, upon completion of a new structure. However, the demolished structure had not been replaced. In holding for the lessor, the court stated that there had been no breach of the lease and that "the construction of the replacement facilities by the appellees [lessors] was a condition precedent to the exercise of [the lessee's] option. The appellees, as owners, had simply decided not to fulfill a condition which they were under no legal obligation to meet. Since the owners had incurred no obligation to build, they had incurred no obligation to lease until and unless they built." Id. at 478.

Similarly, in Sinclair Refining Co. v. Clay, 102 F.Supp. 732 (N.D. Oh. 1951), the court interpreted a lease that contained both an option to purchase and a right of first refusal provision. The right of first refusal provided that in the event the lessor shall receive a bona fide offer to purchase the leased premises, "Lessor shall promptly give notice to Lessee of the terms of such offer, and of Lessor's willingness to sell for the price offered, and Lessee shall have the first

refusal and privilege (which will hereafter be referred to as an 'option') of purchasing said premises at such price. . . ." Id. at 733-34 (emphasis added). The purchase option provided that lessee would have the "exclusive option and privilege of purchasing the leased premises" for $8,500 at any time during the last five years of the lease term. The court noted that the right-to-purchase option and the right of first refusal are "separate and distinct." Id. at 733. Accordingly, when the lessee exercised its option to purchase, the rights and duties of the parties became fixed. The lessor could not then force lessee to pay a higher price pursuant to the right of first refusal by securing a bona fide offer in an amount greater than the option price of $8,500. See also, Kone v. Consolidated Rail Corporation, et al., 1988 WL 96780 at *6 (E.D. Penn. 1988) (applying Pennsylvania law) ("The words 'first privilege' d[o] not grant an absolute option to the lessee to purchase the premises at any time during the term of the lease. The right of the lessee to purchase depend[s] upon the lessor's desire to sell. If the lessor desired to sell at the price named, then the lessee was to have the 'first privilege to buy'. . .").

Moreover, courts consistently have acknowledged and upheld the distinction between option clauses and right of first refusal provisions. See, e.g., Gulf Oil Corp. v. Chiodo, 804 F.2d 284 (4th Cir. 1986) (applying Virginia law, right of first refusal provided that if lessors received an option to purchase and lessors wished to accept it, lessee would have ninety days to match the offer); Shell Oil Co. v. Prescott, 398 F.2d 592 (6th Cir. 1968) (applying Tennessee law, where first refusal provision in lease provided that lessee would have the "prior option to purchase" if lessor received a bona fide offer to purchase); Shell Oil Co.v. Blumberg, 154 F.2d 251 (5th Cir. 1946) (where right of first refusal in lease provided that lessee shall "have the right and option to purchase" if lessor should desire to sell to a prospective purchaser, able, willing and ready to buy).

2. Under California Law, the Terms "First Privilege" and "First Right" Give the Lessee a First Refusal to Lease, Conditioned On the Lessor's Decision to Lease the Property Again

Under California law, the terms "first right," "first privilege," and "first option" only provide the lessee with the conditional right to renew a lease if the lessor is willing to lease the premises again. See Nelson v. Reisner, 331 P.2d 17, 20 (Cal. 1958) (en banc); Ablett v. Clauson, 272 P.2d 753, 755 (Cal. 1954) (en banc).

In Ablett v. Clauson, 272 P.2d 753 (Cal. 1954) (en banc), the Supreme Court of California interpreted a lease provision that provided lessees "shall have the first right and a prior option to secure a lease upon said premises before the same are offered to any other person, firm or corporation for lease or rental and that said option shall contemplate a lease for a period of five (5) years upon terms to be then agreed upon." Id. at 754 (emphasis added). The lessor informed the lessee that he would not renew the lease upon its expiration. The lessees then sought a declaratory judgment that they had a valid option to renew. The Court explained that terms such as "first privilege" and "first right" "do not give the lessee an absolute right to a renewal, but one conditioned upon the lessor's leasing the property, in which case the lessee may have first refusal." Id. at 755. The court concluded that the "clear meaning of the provision is to give the lessee a first refusal or right to lease, conditioned upon the lessor's leasing of the property again." Id. at 755.

The Supreme Court of California cited, with approval, the Ablett decision in another lease renewal case a few years later. See Nelson v. Reisner, 331 P.2d 17, 18 (Cal. 1958) (en banc) (clause providing: "Lessors covenant and agree to extend to Lessee the right of first refusal in the event of the sale of the premises during the term of this lease and the right of first refusal of a new lease at the expiration of the term of this lease.").

Both of these cases also noted the annotation at 6 A.L.R. 2d 820 as explaining the clear weight of authority. See Nelson v. Reisner, 331 P.2d 17, 20 (Cal. 1958) (en banc); Ablett v. Clauson, 272 P.2d 753, 755 (Cal. 1954) (en banc). The annotation contains a review of the case law prior to the drafting and execution of the lease at issue and reveals that most courts have held that a "first right" or "first privilege" provides a conditional rather than an absolute option:

> A numerical majority of the courts dealing with the problem have held that where a lease provides that the tenant shall have the 'first right' or 'first privilege' to re-lease the premises, or to secure a renewal or extension of the lease, a conditional rather than an absolute option is granted the lessee, and he only has a right to release, renewal, or extension provided the landlord is willing to lease the premises again and does not desire to sell them, to use them himself, to demolish buildings thereon, or to make other use of the property inconsistent with a future lease thereof.

A.W. Gans, Annotation, *Granting to Lessee of 'First" Privilege or Right to Re-Lease or to Renewal or Extension of Tenancy Period as Conditioned upon Lessor's Willingness to Re-Lease*, 6 A.L.R. 2d 820, § 2.

Caselaw in a number of other states is consistent with Federal and California law on this issue. See, e.g., Buddenberg v. Welch, 185 N.E. 865 (Ind. Ct. App. 1933) ("in further consideration of such rental payments, now grants unto said James, the first and prior right and option to re-lease said premises for an additional term of five (5) years from the expiration of this lease upon the same terms and conditions set forth and specified"); Landowners Co. v. Pendry, 100 P.2d 632 (Kan. 1940) ("The parties of the second part shall have the right to the first option in case they may desire to continue to occupy said premises under a new lease after the expiration of the present term, but shall give to the party of the first part a thirty-days notice in writing of their intention to exercise such option."); Cloverdale, Co. v. Littlefield, 133 N.E. 565 (Mass. 1921) ("the first right to re-lease for a term of three more years at the expiration of the present

lease on the same conditions and terms as herein mentioned"); Czapp v. Cox, 445 N.W.2d 218 (Mich. Ct. App. 1989) (will contained a clause granting "a first option to purchase said one-half interest in any real estate herein bequeathed to my daughter, Anna C. Cox, at the fair market value of said real estate at the time of exercising option to purchase"); Hill v. Prior, 106 A. 641 (N.H. 1919) ("The lessor agrees to give the lessee the first right to a further lease for a term not exceeding ten years after the expiration of this lease."); Holloway v. Schmidt, 33 Misc. 747; 67 N.Y.S. 169 (Supreme Court of New York, Appellate Term 1900) ("first privilege of a renewal").

The lease at issue in London v. Joslovitz, 110 N.Y.S.2d 56 (1952), concerned the same language used in the lease in this case ("first right, privilege and option") in a right to purchase provision. Specifically, the lease provision in London provided that the tenant "shall have the first right, option and privilege of purchasing said premises and the fixtures therein . . . on the first day of March 1951, free and clear of all incumbrances, for the sum of . . . $45,000." (Emphasis added). The tenant asserted an absolute and unconditional option to purchase. The court held that "[i]t is well-established law of this State that a 'first right, option and privilege of purchasing' is not an absolute option, but merely an option conditioned upon the owner's willingness to sell, or a 'first refusal' if he offers the premises for sale to others." Id.

The court further asserted that "It is wholly inescapable, however, that in order to construe this instrument as an absolute and unconditional option to purchase, that the word 'first' must be eliminated or ignored. This, the Court of Appeals has said squarely, may not be done." Id.

In this case, the lease provision provides that lessee "shall have the first right, privilege and option to renew this Lease for a period of fifty (50) years at a rental to be fixed by agreement between said parties and/or their successors in interest." (Emphasis added.) Consistent with the

rules of contract interpretation, the word "first" indicates that this is a conditional right of first refusal:

> [T]he word 'first' was inserted in the [particular] clause for a purpose – that of preferring the lessee in the event the lessor actually decided to lease the property again – but that such word cannot in effect be read out of the clause so as to make the lessee's privilege an absolute and unconditional option binding on the lessor whether he desires to lease the property again or not.

A.W. Gans, Annotation, *Granting to Lessee of 'First" Privilege or Right to Re-Lease or to Renewal or Extension of Tenancy Period as Conditioned upon Lessor's Willingness to Re-Lease*, 6 A.L.R. 2d 820, § 2 (1949).[3]

In its brief, COBI ignores the distinction between conditional rights of first refusal and unilateral options, and assumes that the mere use of the term "option" undeniably implies an "option," without analyzing the full context in which the term appears. COBI's suggested interpretation also gives no effect to the term "first" in the phrase "first right, privilege and option." See NVT Technologies, Inc., 370 F.3d at 1159 (finding that a contract should be interpreted to give reasonable meaning to all parts without rendering any part meaningless). The emphasis is on the term "first" and, as demonstrated above, many courts have found a right of first refusal, even in cases in which the word "option" has been used in the phrase. See, e.g., 12

---

[3] Many different terms have been used to create a right of first refusal for the renewal of a lease. See, e.g., Buddenberg v. Welch, 185 N.E. 865 (Ind. Ct. App. 1933) ("the first and prior right and option to re-lease"); Landowners Co. v. Pendry, 100 P.2d 632 (Kan. 1940) ("the right to the first option . . . under a new lease"); Cloverdale, Co. v. Littlefield, 133 N.E. 565 (Mass. 1921) ("the first right to re-lease"); Hill v. Prior, 106 A. 641 (N.H. 1919) ("the first right to a further lease"); Holloway v. Schmidt, 67 N.Y.S. 169 (Supreme Court of New York, Appellate Term 1900) ("first privilege of a renewal"). Similar language has been used in rights of first refusal to purchase property (rather than to renew a lease), such as "first option to buy," "first privilege of buying," "preemptive option," "preemptive right," 3 Eric Mills Holmes, Corbin on Contracts, §§ 11.3, n. 1, 11.4 (revised ed. 2005). In London v. Joslovitz, 110 N.Y.S.2d 56 (1952), the right of first refusal to purchase property used the same language at issue herein ("the first right, option and privilege of purchasing said premises").

Witkin, Summary of California Law, Real Property, § 530 (10th ed. 2005)("A clause giving the lessee 'the first right and a prior option to secure a lease upon said premises before the same are offered to any other person' merely gives the lessee preference over a stranger. It does not constitute an unqualified option to renew and therefore does not preclude the lessor's retention of the property without further leasing. (See Ablett v. Clauson, 272 P.2d 753 (Cal. 1954); Nelson v. Reisner, 331 P.2d 17 (Cal. 1958)); see also, 12 Witkin, Summary of California Law, Real Property, § 533 (10th ed. 2005)("Language which give the first privilege, first opportunity, or first right merely allows the lessee a prior or preferential right to buy.")

COBI argues that the lease should be interpreted in its favor because "a grant is to be interpreted in favor of the grantee"' and that "in construing provisions of a lease relating to renewals, where there is any uncertainty, the tenant is favored, and not the landlord, because the latter, having the power of stipulating in his own favor, has neglected to do so." In support of its argument, COBI relies upon Streicher v. Heimburge, 272 P. 290 (Cal. 1928). In that case, however, the California Supreme Court interpreted a lease provision in favor of the lessee based upon a California statute of contract interpretation (Civil Code § 1654) which provides, "[i]n cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Id. at 294. In this case, NPS was not an original party to the lease nor was it involved in drafting or negotiating its terms. Instead, it acquired the land subject to the already-existing lease and its terms. Therefore, the rule of contract construction that mandates interpreting lease provisions against the landlord or lessor (who presumably caused the uncertainty), is wholly inapplicable here. On the contrary, the provision should be interpreted against COBI, since it is the parent company of SVTI, and SVTI was an original party to the lease. Pl. Mot. S. J. at 2.

Next, COBI takes the right of first refusal clause and breaks it down into"three distinct powers" – the "first right" to renew, the "privilege" to renew, and the "option." COBI argues that it is the third power – the option power – that COBi has invoked. COBI's contrived interpretation is completely inconsistent with caselaw and common sense. Although many courts have interpreted contracts that contain both a right of first refusal and an option as separate, distinct provisions, rarely is the right of first refusal and option in the same sentence, as COBI argues here. COBI suggests a tortured interpretation that creates internal inconsistency in the phrase, and also renders meaningless or redundant the term "privilege." If there are, in fact, three distinct "powers" created by the phrase "first right, privilege and option to renew," as COBI's interpretation suggests, COBI would have a separate right to exercise its "privilege" to renew the lease. A right which makes no sense at all.

Moreover, COBI argues that the language following "first right, privilege and option," supports its argument that this is an option contract. The lease provides that "Within ninety (90) days prior to the expiration of said Lease, Lessee shall notify Lessor, in writing, of its election to exercise its option to extend said Lease for the additional term, and shall notify Lessor of the rental which it is willing to pay for said extended term." However, this language merely clarifies when and how COBI must exercise its right of first refusal. Almost all rights of first refusal provide a deadline or time frame within which the option must be exercised after the right of first refusal has ripened into an option. See, e.g., Landowners Co. v. Pendry, 100 P.2d 632 (Kan. 1940) ("The parties of the second part shall have the right to the first option in case they may desire to continue to occupy said premises under a new lease after the expiration of the present term, but shall give to the party of the first part a thirty-days notice in writing of their intention to

exercise such option.") Indeed, without a deadline for exercising a right of first refusal, the lessor's ability to re-lease to another lessee would never ripen.

Accordingly, the lease does not provide COBI an unconditional right to renew the lease, as COBI alleges, but gives COBI a conditional right of first refusal in the event NPS decides to continue to lease the area after the end of the lease term.

### C. COBI Fails to Allege That the Government Decided to Re-lease the Premises, As Required By the Conditional Right of First Refusal In the Lease

As demonstrated above, it is clear that the plain language of paragraph 10 provides a conditional right of first refusal. Therefore, in order for any of COBI's renewal rights to have been triggered under the provision, NPS must indicate its willingness and desire to re-let the premises. Without this, there has been no breach (anticipatory or otherwise) of paragraph 10 or any other express provision of the lease. There is no allegation in the complaint that NPS has entered into a lease with another party or received an offer to lease from another party. In fact, COBI admits in its complaint that it was informed in writing by NPS that "[u]nder applicable law and policy, the NPS cannot offer any party, including [plaintiff] COBi, the opportunity to lease the area on Shasta Bally." Compl. ¶ 11. Because NPS has determined that it will not continue to lease the area and, thus, may not renew the lease, COBI has failed to state a claim that NPS breached any express term of the lease. Accordingly, COBI's claims should be dismissed, or, in the alternative, judgment should be entered for the United States as a matter of law.

## IV. Renewal of the Lease Is Prohibited By Applicable Law and NPS Regulations and Policies

As noted above, applicable law and policy prohibits NPS from renewing the lease for the area on Shasta Bally. Specifically, the applicable statutory authority does not authorize a lease of NPS lands. See 16 U.S.C. § 5 ("The head of the department having jurisdiction over the lands

be, and hereby is, authorized and empowered, under general regulations to be fixed by him, to grant an easement for rights of way, for a period not exceeding fifty years from the date of the issuance of such grant, over, across and upon the public lands and reservations of the United States. . . .). Moreover, applicable NPS regulations (36 C.F.R. part 14) do not allow for a lease of NPS lands for telecommunications facilities. The regulations state, "No interest granted by the regulations in this part shall give the holder thereof any estate of any kind in fee in the lands. The interest granted shall consist of an easement, license, or permit in accordance with the terms of the applicable statute; no interest granted shall be greater than a permit revocable at the discretion of the authorized officer unless the applicable statute provides otherwise." (Emphasis added.)

In addition, NPS policy on right-of-way permits is found in National Park Service RM-53, "Reference Manual Special Park Uses." Appendix 5 of RM-53 addresses NPS rights-of-way and provides: "A ROW permit is the required instrument for use in documenting and permitting utilities and other uses of NPS land within the National Park Service." See National Park Service RM-53, "Reference Manual Special Park Uses," Appendix 5 - Rights-of-Way, page A5-2 ("Appendix 5"). See Exhibit 2, attached hereto. Telecommunications are among the utilities covered by Appendix 5. Id. at A5-1.

Appendix 5 further adds:

> Special Use Permits or other documents will not be used to authorize utilities within NPS areas, including those which serve the park. All existing special use or other types of permits issued for this purpose will be converted to ROW permits as they expire or sooner at the convenience of the park.

Id. at page A5-3. Thus, under applicable NPS policy, the lease must be converted to a right-of-way permit upon expiration, and the applicable statutory authority and NPS regulations do not authorize leasing of NPS lands, including further leasing of the area at issue in this matter.

V. Plaintiff Seeks Damages That Are Speculative, Remote, And Unforeseeable

COBI seeks damages in an amount in excess of $1,000,000 for the Government's anticipatory breach of the terms of the lease agreement. (Complaint, ¶ 15.) However, even if COBI were to succeed on its claims, is not entitled to recover the damages it seeks.

It is well-established that damages may only be recovered against the Government if they arise from the natural and probably consequences of a contract breach. CCM Corp. v. United States, 15 Cl. Ct. 670, 671-72 (1988). Damages are not recoverable if they are too speculative or too remote from the alleged breach. San Carlos Irrigation & Drainage Dist. v. United States, 111 F.3d 1557, 1562-63 (Fed. Cir. 1997); Assurance Co. v. United States, 813 F.2d 1202, 1205 (Fed. Cir. 1987). Consequential damages are not recoverable. CCM Corp, 15 Cl. Ct. at 671-72. Moreover, damages resulting from a contract beach must be reasonably foreseeable and contemplated by the parties when entering into the contract. Id.

COBI does not, and cannot, allege that the damages it seeks were foreseeable at the time the lease was entered into or that they were the direct result of the alleged breach. In addition, this Court has firmly held that damages for anticipated lost profits, especially lost profits on future contracts, are too speculative in nature and lack the necessary direct nexus to the breached contract. Essen Mall Properties v. United States, 21 Cl. Ct. 430, 447 (1990)("The case law is clear in holding that damages claims for loss of anticipated profits are generally 'too remote, consequential and speculative' from any breach that may have occurred to be recoverable as a matter of law.")(quoting Rhen v. United States, 17 Cl. Ct. 140, 143-44 (1989); Malissa Co., Inc.

v. United States, 11 Cl.Ct. 389, 391-92 (1986). The anticipated lost profits demanded in this case are especially speculative and remote because COBI is seeking lost profits for a fifty-year renewal that the Government was not even obligated to execute.

Finally, COBI identifies no provision in the lease that obligates the Government to pay anticipated lost profits in the event of the Government's breach. Indeed, no such provision exists. Accordingly, this Court should dismiss COBI's claims for anticipated lost profits.

## CONCLUSION

For these reasons, the United States respectfully requests that this Court dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. Alternatively, we respectfully request that the Court enter judgment in favor of the Government as a matter of law.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Mark A. Melnick
MARK A. MELNICK
Assistant Director

OF COUNSEL:

PAULA LEE
Office of the Solicitor
Department of the Interior
Pacific Southwest Region
1111 Jackson Street, Ste. 735
Oakland, California 94607

s/Marla T. Conneely
MARLA T. CONNEELY
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street
Washington, D.C. 20530
tel: (202) 307-1011
fax: (202) 307-0972

June 20, 2006

Attorneys for Defendant