# UNITED STATES COURT OF FEDERAL CLAIMS

**CALIFORNIA OREGON BROADCASTING, INC.,**

**Plaintiff,**

vs.

**UNITED STATES OF AMERICA,**

**Defendant.**

**No. 06-CV-00116-NBF**

**Plaintiff California Oregon Broadcasting, Inc.'s Reply Brief in Support of Motion for Partial Summary Judgment and Opposition to Defendant's Cross-Motion to Dismiss, or in the Alternative, Motion for Summary Judgment**

**ELECTRONICALLY FILED: 07/7/2006**

TABLE OF CONTENTS

Page

I. INTRODUCTION .....2

II. ARGUMENT .....3

A. Governing Law .....3

B. Under the Unambiguous Language of the Lease Agreement, COBi Has an Unconditional Option .....4

1. The Government's Proposed Interpretation Renders the Words "Privilege and Option" Surplussage .....4

2. The Cases Cited by the Government are Inapposite .....5

3. Viewing the OPTION Clause in its Entirety Establishes that the Option is Unconditional .....8

C. Extrinsic Evidence Confirms COBi's Interpretation .....11

D. Under California Law Regarding Contract Interpretation, the Option Must Be Construed in Favor of COBi. .....12

E. The Government's Anticipatory Breach .....13

F. COBi's Remedies .....14

III. CONCLUSION .....16

TABLE OF AUTHORITIES

Page

*CW Govt. Travel, Inc. v. United States*,
63 Fed. Cl. 369 (2004) ....................14

*Cont'l Collection & Disposal, Inc. v. United States*,
29 Fed. Cl. 644 (1993) ....................2

*Gulf Oil Corp. v. Chiodo*,
804 F.2d 284 (4th Cir. 1986)....................6

*Kone v. Consolidated Rail Corp.*,
1988 U.S. Dist. LEXIS 14400 (E.D. Pa. Sept. 14, 1998)....................5

*Luxenberg v. Mayfair Extension, Inc.*,
382 F.2d 475 (D.C. Cir. 1967) ....................5

*Mann v. United States*,
68 Fed. Cl. 666 (2005) ....................14, 15

*Shell Oil Co. v. Blumberg*,
154 F.2d 251 (5th Cir. 1946)....................5

*Shell Oil Co. v. Prescott*,
398 F.2d 592 (6th Cir. 1968)....................6

*Sinclair Refining Co. v. Clay*,
102 F. Supp. 732 (N.D. Ohio 1951)....................6

**STATE CASES**

*Ablett v. Clauson*,
43 Cal. 2d 280 (1954)....................6

*Associated Truck Lines, Inc. v. Baer*,
346 Mich. 106 (1956)....................10

*Buddenberg v. Welch*,
185 N.E. 865 (Ind. Ct. App. 1933)....................7

*Butt v. Maier & Zobelein Brewery*,
6 Cal. App. 581 (1907)....................10

TABLE OF AUTHORITIES
(continued)

Page

*Cloverdale Co. v. Littlefield*,
240 Mass. 129 (1921) ....................7

*Czapp v. Cox*,
179 Mich. App. 216 (1989) ....................7

*Doll v. Maravilas*,
82 Cal. App. 2d 943 (1947)....................12

*Hill v. Prior*,
79 N.H. 188 (1919) ....................7

*Hillman v. Leland E. Burns, Inc.*,
209 Cal. App. 3d 860 (1989)....................11

*Hoag v. Jenan*,
86 Cal. App. 2d 556 (1948)....................14

*Holloway v. Schmidt*,
67 N.Y.S. 169 (1900) ....................7

*Landowners Co. v. Pendry*,
151 Kan. 674 (1940)....................7

*London v. Joslovitz*,
110 N.Y.S.2d 56 (1952) ....................7

*Nelson v. Reisner*,
51 Cal. 2d 161 (1958)....................6

*Spector v. National Pictures Corp.*,
201 Cal. App. 2d 217 (1962)....................12, 13

*Steen v. Rustad*,
132 Mont. 96 (1957)....................9

**STATUTES**

Cal. Civil Code § 1654 ....................12

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), plaintiff California Oregon Broadcasting, Inc., hereby submits its combined reply brief in support of motion for partial summary judgment and opposition to defendant's cross-motion to dismiss, or in the Alternative, motion for summary judgment.

## STATEMENT OF THE ISSUE

Whether plaintiff California Oregon Broadcasting, Inc., is entitled to partial summary judgment as to liability of defendant United States for anticipatory breach of the OPTION clause of the 1970 Lease Agreement governing land that plaintiff leases from defendant resulting from defendant's refusal to recognize plaintiff's exercise of its unconditional option to extend the lease.

## STATEMENT OF THE CASE

For purposes of plaintiff's Statement of the Case for the cross-motions for summary judgment, plaintiff adopts its Background Facts as set forth in its motion for partial summary judgment. In addition, plaintiff accepts defendant's Nature of the Case as set forth in defendant's opposition to plaintiff's motion for partial summary judgment and defendant's cross-motion to dismiss, or in the alternative, motion for summary judgment.

# I. INTRODUCTION

The primary issue in dispute in this matter is whether the OPTION clause in the Lease Agreement between California Oregon Broadcasting, Inc. ("COBi") and the National Park Service ("NPS") granted COBi an unconditional option to extend the lease or merely a conditional right of first refusal. COBi submits that both the express language of the grant and the context of the grant compel the conclusion that the option is unconditional.

In its opposition and cross-motion, the Government argues that the use of the word "first" in the OPTION clause renders COBi's option conditional. The Government cites several cases involving leases employing such terms as "first right," "first option," and "prior option" in which courts concluded that the grants were conditioned on the lessor's willingness to re-lease the property. The Government's cases (as well as cases cited by COBi), however, do not stand for a bright-line rule that use of a word like "first" or "prior" necessarily means that an option right is conditional; rather, that the cases demonstrate it is necessary to examine the context of an option grant to determine the nature of that grant. Indeed, the Government cites a case in its brief for this very point. (Govt. Brief at 9, citing *Cont'l Collection & Disposal, Inc. v. United States,* 29 Fed. Cl. 644, 649 (1993) ("A contract should be viewed in its entirety and given the plain meaning which would be derived by a reasonably intelligent person acquainted with the contemporaneous circumstances")). Yet the Government puts forth an argument that depends entirely on a single word – "first" – and ignores the remainder of the clause in which the word is used as well as the rest of the contract. In this case, ascertaining the parties' intention, as expressed in the lease as a whole and the differences between this lease and prior leases for the same property, leads to the conclusion that COBi's option is unconditional.

Moreover, even if there were some remaining doubt about whether COBi's option is unconditional, under California law, a grant is construed in favor of the grantee and a lease is construed in favor of the tenant. Although the Government argues (without citation) that these rules of contract interpretation do not apply here because the Government was not the original landlord/grantor, California law makes clear that a successor landlord is bound by the same rules of interpretation that applied to the original landlord.

Thus, the Government's position is untenable: the Lease Agreement unambiguously provides COBi with an unconditional option, but, even if the OPTION clause were ambiguous, it would be construed in favor of COBi as the tenant/grantee. By refusing to recognize COBi's exercise of its option, the Government anticipatorily breached the Lease Agreement. Accordingly, the Court should grant COBi's motion for partial summary judgment as to liability and deny the Government's cross-motion.

## II. ARGUMENT

### A. Governing Law

The Government contends that federal law should apply to this dispute because the Government is a party to the Lease Agreement. In support of this proposition, the Government cites two cases applying federal law to situations in which the Government was an original party to the lease. Here, however, the Government became the lessor by succeeding to the interests of the original lessor. Significantly, in its brief, the Government acknowledges that "it acquired the land subject to the already-existing lease and its terms." (Govt. Brief at 17). Inasmuch as there is no dispute that California law governed prior to the Government succeeding to Lois Tracy's and her siblings' interests in the property, California

law continued to govern the Lease Agreement after the Government acquired the land at issue.[1]

**B. Under the Unambiguous Language of the Lease Agreement, COBi Has an Unconditional Option**

**1. The Government's Proposed Interpretation Renders the Words "Privilege and Option" Surplussage**

At the outset of its brief, the Government sets forth several maxims of contract interpretation, such as that a court must "give[] reasonable meaning to all parts of the contract," "not render any portion meaningless," and view a contract in its entirety. Then, the Government proceeds to ignore each of these maxims. In interpreting the Lease Agreement's OPTION grant (which provides, *inter alia*, that "Lessee shall have the first right, privilege and option to renew" the lease), the Government focuses exclusively on the presence of the word "first." This concentration on the word "first" leads the Government to advocate an interpretation that turns certain words into surplussage and renders part of the grant meaningless. Specifically, the Government's interpretation combines "first right, privilege and option to renew" into a single conditional right of first refusal. Under the Government's construction, "Lessee shall have the first right, privilege and option to renew" means exactly the same thing as "Lessee shall have the first right to renew," rendering the words privilege and option surplussage. Because the Government has effectively made "privilege and option" redundant with "right," the Government has violated the principles that it starts from

[1] In any event, the Government does not cite any federal law regarding interpretation of option provisions. Although the Government cites decisions from several federal courts, none of those cases involve the application of federal law. Rather, each interprets the state law that was applicable to the particular lease.

– that the Court must "give[] reasonable meaning to all parts of the contract" and "not render any portion meaningless."

The Government argues that COBi's interpretation fails to give separate meaning to the word "privilege." But the Government ignores that its interpretation gives no effect to the parties' choice to use language much more extensive than simply "first right to renew." Only COBi advances an interpretation that provides meaning to the parties' deliberate expansion beyond "first right to renew" to "privilege and option" as well.

Significantly, elsewhere in the Lease Agreement, the parties elected to provide COBi with just a "first right." Specifically, Paragraph 5 provides, *inter alia*, that "the Crawford Distributees hereby grant to Lessee co-extensive with the terms of this Lease, the first right to use [certain spring] water, or all of it if needed for its purposes" (emphasis added). The parties' decision to use the more expansive language "first right, privilege and option" in Paragraph 10 strengthens the conclusion that they intended something more than the simple "first right" provided in Paragraph 5. Yet the Government's interpretation takes no account of this difference.

**2. The Cases Cited by the Government are Inapposite**

In support of its argument, the Government relies on several cases that do not inform the analysis of the Lease Agreement here. For instance, *Luxenberg v. Mayfair Extension, Inc.*, 382 F.2d 475 (D.C. Cir. 1967), involved interpretation of a lease in which the first option was expressly conditioned on the occurrence of certain other events. Because the stated precondition had not been met, the lessee could not exercise its option. Similarly, *Shell Oil Co. v. Blumberg,* 154 F.2d 251 (5th Cir. 1946) and *Kone v. Consolidated Rail Corp.*, 1988 U.S. Dist. LEXIS 14400 at *13-14 (E.D. Pa. Sept. 14, 1998), included express

language making it clear from context that the lessee's option was contingent on the lessor's willingness to sell. Here, the lease contains no such conditions, and in fact, consistent with the reasoning in *Blumberg* and the contract interpretation maxims cited by the Government, as described below, the context makes clear that COBi's option is unconditional.

The Government cites other federal cases for the rather unremarkable point that an option is different from a right of first refusal. *See, e.g., Sinclair Refining Co. v. Clay*, 102 F.Supp. 732 (N.D. Ohio 1951); *Gulf Oil Corp. v. Chiodo*, 804 F.2d 284 (4th Cir. 1986); *Shell Oil Co. v. Prescott*, 398 F.2d 592 (6th Cir. 1968). COBi does not dispute this point. Indeed, because these cases indicate that a first right of refusal and an option are different rights, the fact that the Lease Agreement includes language relating to <u>both</u> a first right of renewal <u>and</u> an option supports COBi's argument that the Lease Agreement gives COBi <u>both</u> rights.

Neither of the two California cases cited by the Government supports its contention that the language used in the lease at issue here provided only a conditional option. *Ablett v. Clauson*, 43 Cal. 2d 280 (1954), dealt with a grant of a "first right and prior option" to the lessees to renew the lease "before the same are offered to any other person, firm, or corporation for lease or rental." In its opinion, the California Supreme Court added emphasis to the words "*before the same are offered to any other person, firm or corporation for lease or rental*" when quoting the language in its conclusion that the "prior option" was conditioned on the lessor's willingness to re-lease the property. 43 Cal. 2d at 284. Of course, no such conditional language is present here, and, as a result, *Ablett* provides no guidance. The other California case cited, *Nelson v. Reisner*, 51 Cal. 2d 161 (1958), involved the

interpretation of the grant of a "right of first refusal," and has no relevance whatsoever to the OPTION clause in the Lease Agreement here.

Similarly, with the exception of *London v. Joslovitz*, 110 N.Y.S.2d 56 (1952) and *Buddenberg v. Welch*, 185 N.E. 865 (Ind. Ct. App. 1933), each of the non-California cases cited by the Government at pages 14-15 of its brief involved interpretations of "first option," "prior option," and "first right of renewal" language – i.e., unlike the more expansive language in the Lease Agreement here. In some of the cases, the court examined the context to determine that the parties intended the right to be conditional. *Hill v. Prior*, 79 N.H. 188 (1919); *Holloway v. Schmidt*, 67 N.Y.S. 169 (1900).

In other cases, the court's decision turned on its conclusion that the right had to be conditional in order to give meaning to the word "first." *See Landowners Co. v. Pendry*, 151 Kan. 674 (1940); *Cloverdale Co. v. Littlefield*, 240 Mass. 129 (1921); *Czapp v. Cox*, 179 Mich. App. 216 (1989); *see also, Hill v. Prior*, 79 N.H. at 189. That approach is not required here to give meaning to the word "first." As COBi set forth in its original motion, construing the option as unconditional does not require ignoring the word "first." Rather, "first" has meaning as a modifier to "right." Specifically, if COBi had failed to follow the procedures for exercising its option, COBi still would have a right of first refusal on a renewal. Although the option right requires timely exercise by COBi, the right of first refusal depends only on NPS's determination that it will re-lease the premises, whenever that occurs.

As for *London*, the court, applying New York law, concluded without any explanation of the context that "first right, option and privilege" is not an absolute option because construing the option as unconditional required ignoring the word "first." The absence of discussion and analysis means this non-California decision provides little

guidance in considering the issue here. The court in *Buddenberg* reached a similar conclusion. Notably, the language at issue in *Buddenberg* was the grant of a "first and prior right and option," which is markedly different than the language in the Lease Agreement's OPTION clause.

**3. Viewing the OPTION Clause in its Entirety Establishes that the Option is Unconditional**

The context of the option grant here establishes that the option is unconditional. The theme of examining the context of option grants to determine whether or not the grants are unconditional is one that runs through the cases cited by both COBi and the Government. For example, as set forth above, the courts in *Luxenberg, Blumberg, Kone,* and *Ablett* (all cited by the Government) looked at the context of the option grants to analyze the nature of the options. COBi submits that doing so here (which, as the Government acknowledges, is the appropriate method for interpreting a contract) leads to the inescapable conclusion that the clear intent of the parties as manifested in the OPTION clause was for the lessee to have an unconditional option.

Initially, COBi notes that, as described above, the parties did not choose to simply provide the lessee with a "first right." Rather, by electing to employ more expansive "first right, privilege and option" language, the parties manifested an intent for the lessee to have something more than merely a first right of renewal.

In addition, the clause at issue is entitled "OPTION" – it is not called "FIRST OPTION" or "PRIOR OPTION" or "FIRST RIGHT OF RENEWAL." Indeed, the phrases "first option" and "prior option" appear nowhere in the Lease Agreement. In addition, the next three sentences in the clause after the option grant set forth how COBi was to notify

NPS "of its election to exercise its option to extend said Lease for the additional term" (emphasis added):

> Within ninety (90) days prior to the expiration of said Lease, Lessee shall notify Lessor, in writing, of its election to exercise its option to extend said Lease for the additional term, and shall notify Lessor of the rental which it is willing to pay for said extended term.[2] If said rental is not acceptable to Lessor or her successors or assigns, then within thirty-five (35) days after the receipt of such written notice, the amount of rental shall be submitted to arbitration. Lessor shall appoint one arbitrator and Lessee shall appoint one arbitrator, and if said arbitrators can not agree, then they shall jointly appoint a third arbitrator, in which event the decision of a majority of the arbitrators shall be conclusive upon Lessor and Lessee and shall be rendered and determined prior to August 1, 2006.

The Government contends that "this language merely clarifies when and how COBI must exercise its right of first refusal." (Govt. Brief at 18). The Government's interpretation, however, fails to give meaning to the two instances of the word "its" in the phrase "its election to exercise its option to extend [the] Lease." That is, the use of the word "its" indicates that the option belongs to COBi alone and that the Government has no input into whether COBi can exercise the option. In *Steen v. Rustad*, 132 Mont. 96 (1957), the Montana Supreme Court considered a lease under which the landlord agreed to "let and lease unto the tenant, and give the tenant a first option to buy." Even though the grant was for a "first option," the Court considered the totality of the agreement, including language regarding the tenant exercising "his option," and concluded that the option was unconditional. *See also*, *Butt v. Maier & Zobelein Brewery*, 6 Cal. App. 581 (1907)

---

[2] Although the sentence states that the Lessee must provide notice "within ninety days prior to the expiration" of the lease, the remainder of the clause, including the requirement that the arbitrators' decision as to this lease expiring on July 31, 2006 be made prior to August 1, 2006, makes clear that the Lessee must provide notice *no later than* ninety days prior to the expiration of the lease.

(concluding from context of grant to lessee of "prior right to lease" premises that lessee's right was unconditional).

The Michigan Supreme Court undertook a similar context-based analysis in *Associated Truck Lines, Inc. v. Baer*, 346 Mich. 106 (1956). In *Baer*, the contract granted a lessee of a property the "'first right and option to purchase from the undersigned the premises' for $65,000 at any time during the term of the lease, but not until after January 1, 1944." *Id.* at 109. Just as the Montana Supreme Court did in *Steen*, the Michigan Supreme Court reviewed the context of the grant and held that the use of the word first did not render the option conditional. *Id.* at 112. Specifically, the Court concluded that if it interpreted the option as a conditional one, the phrase "but not until after January 1, 1944" would become meaningless. To give effect "to the intent of the parties gathered from the instrument as a whole," the Court interpreted the language "first right and option" as providing an unconditional option. *Id.* Similarly, here, the title of the clause and the language granting the lessee "its election" and "its option to extend" emphasizes that the parties did not intend the lessee's right to extend the lease to be conditional.

COBi submits that if the actual purpose of the remainder of the clause were to clarify how COBi was to exercise its right of first refusal, then the clause would have instructed COBi how to notify the Government of "its exercise of its right of first refusal" or "its exercise of its first option," not how to notify the Government of "its exercise of its option." In addition, the Government's proposed interpretation would lead to absurd results. Specifically, the sentences impose certain notice requirements on COBi for it to timely exercise its option. Under the Government's interpretation, the Government could extinguish COBi's purported first right of refusal by simply waiting until after the 90-days before lease

expiration deadline passed before indicating that it was willing to re-lease the premises. If the Government did in fact wait until after the deadline, COBi would not be able to meet the notice requirement and would have lost its right of first refusal without ever having the chance to exercise that right. For the Government to defeat COBi's rights with a procedural maneuver would be an absurd result, and accordingly, the Government's interpretation should be rejected. *See Hillman v. Leland E. Burns, Inc.*, 209 Cal. App. 3d 860, 686 (1989).

### C. Extrinsic Evidence Confirms COBi's Interpretation

In its motion, COBi pointed to changes to the OPTION clause from prior versions of the lease as extrinsic evidence that the option is unconditional. In contrast, the Government's Opposition/Cross-Motion does not address how the Court should interpret the agreement in the event that the Court finds the OPTION clause ambiguous. To the extent that the Court concludes that either interpretation is plausible, COBi has pointed to extrinsic evidence informing the Court's analysis, while the Government has offered none.

Although the grant language from the prior lease is unchanged, the parties introduced titles in the 1970 Lease Agreement and entitled the clause in dispute "OPTION." The language regarding COBi's exercise of "its option" was also new. As COBi explained in its motion, because the parties specifically added the language during negotiations of the 1970 Lease Agreement, the parties' choice to make changes to call the clause at issue an "OPTION" clause and to establish expressly how the lessee would exercise "its option" strongly supports the conclusion that the parties intended for COBi to have an unconditional option, rather than simply a conditional right of first refusal.

**D. Under California Law Regarding Contract Interpretation, the Option Must Be Construed in Favor of COBi.**

If there were any doubt that the option is unconditional, such doubt is removed when certain California rules of contract interpretation are applied. Specifically, as COBi argued in its original motion, under California law, "a grant is to be construed in favor of the grantee" and a lease is to be construed in favor of the tenant. In its brief, the Government, without citation, contends that, because the case cited by COBi relates to Cal. Civil Code § 1654 (pertaining to interpreting contracts against the drafter), these rules of interpretation do not apply to the Government since the Government was not involved in drafting the lease. This argument makes no sense. Specifically, under the Government's theory, the interpretation of a lease would be changed when the original lessor divested itself of its interest in the property. This would not be fair to the lessee, whose rights would be reduced through a transaction in which it had no involvement (i.e., the transaction resulting in a new landowner).

Moreover, California courts have expressly rejected the Government's argument. *See e.g., Doll v. Maravilas*, 82 Cal. App. 2d 943, 949 (1947); *Spector v. National Pictures Corp.*, 201 Cal. App. 2d 217, 225 (1962). *Doll* involved a dispute under a lease agreement as to whether the lessees breached the terms of a lease by failing to keep their restaurant open during certain business hours. The landlord, who was a successor to the original landlord, contended that he was not bound by his predecessor's interpretation of the terms of the lease. The court rejected the landlord's argument, concluding that "[i]t is a well-established rule of law that an assignee, such as [the landlord] is, can gain no better position than his assignor had with respect to the subject matter of the assignment." *Doll*, 82 Cal.

App. 2d at 949; *see also*, *Spector*, 201 Cal. App. 2d at 225 ("Although the uncertainty was caused by defendant's assignor, successors in interest are bound by the construction reasonably applicable to the original parties.") Here, if the Government's argument were correct, the Government would have gained a better position with respect to interpretation of the lease than the Government's predecessor had. Such a result is not permitted under California law.

Thus, although COBi believes that the Lease Agreement unambiguously provides it with an unconditional option, even assuming that the Court concludes that the nature of the option is ambiguous, under California rules of contract interpretation, this Court must still construe the option in favor of COBi as the grantee/tenant – that is, as unconditional.

**E. The Government's Anticipatory Breach**

The Government contends that COBi has not alleged a breach because it has not alleged that NPS was willing to re-lease the premises. Of course, the Government's argument is relevant only to the extent that the option is conditional. As COBi has established, the option is unconditional, and, as a result, the Government's willingness to re-lease the premises is irrelevant. By refusing to recognize COBi's exercise of its option, the Government anticipatorily breached the Lease Agreement.

Equally irrelevant is the issue of whether NPS regulations allow the Government to offer the premises for lease. The Government made the decision in the early-1970s to acquire the lease, and it must live by the terms of the lease. Although NPS regulations may explain why the Government has decided to breach the contract, the regulations do not excuse the breach, and the Government remains liable for the breach.

**F. COBi's Remedies**

The Government argues that it is entitled to summary judgment as to COBi's damages because COBi's claim for lost profits is too speculative or too remote.[3] Before analyzing the Government's assertion, it is worth reviewing the nature of the damages that COBi seeks to recover. Specifically, COBi currently generates revenue by sub-leasing the subject property to various radio and television stations, cellular companies, and other communications-related entities. If the Government is able to transition to a permit system which charges each user of the mountaintop a separate fee (as it seeks to do by refusing to recognize COBi's exercise of its option), COBi will no longer be able to generate such revenues. In addition, the Government has advised COBi that COBi and the other tenants will be responsible for all government site assessments, surveys and NEPA studies once the Government assumes jurisdiction over the site.

Under California law, lost profits of this nature are recoverable. *See, e.g., Hoag v. Jenan*, 86 Cal. App. 2d 556, 564 (1948) ("[W]here the prospective profits are the natural and direct consequences of the breach of the contract they make be recovered"). Lost profits are also recoverable under federal law (which does not apply here). *See, e.g., Mann v. United States*, 68 Fed. Cl. 666, 670 (2005) ("[W]hen the lost profits directly relate to the

---

[3] In its "Summary of Argument" section, the Government also claims that COBi is not entitled to declaratory relief. The Government, however, never advances this argument in the body of its brief and does not offer any authority for the proposition. In any case, under the Tucker Act, the Court of Federal Claims has authority to grant declaratory relief "to resolve claims 'involving a fundamental question of contract interpretation or a special need for early resolution of a legal issue.'" *CW Govt. Travel, Inc. v. United States*, 63 Fed. Cl. 369, 387 (2004) (citation omitted). Here, the Court is presented with just such a fundamental question of contract interpretation.

subject of the contract, they are recoverable, even if they would have required a transaction with a third party.")

In *Mann*, the plaintiff leased land from the Government and was granted the exclusive right and privilege to, among other things, extract and sell geothermal steam from the land. The Government terminated the lease, and plaintiff sued for breach of contract, seeking lost profits relating to sale of the steam. The Government then moved for summary judgment on the ground that plaintiff could not recover lost profits. In denying the Government's motion, the court contrasted lost profits that are unrecoverable as too remote (i.e., "those that are not based directly on the subject of the contract" such as injuries to the plaintiff's reputation) with lost profits that are recoverable because they "directly relate to the subject of the contract." *Id.* at 669-70 (citation omitted).

Here, COBi seeks lost profits on the land that is the subject of its lease with NPS. Moreover, the Lease Agreement expressly contemplates that the lessee will use the land "for television, radio, microwave and other communication purposes." Lease Agreement, ¶ 5. The Lease Agreement also provides that the lessee will have the right "to assign, sublet, or underlet all or any part of said demised premises for any purposes granted hereunder." Lease Agreement, ¶ 3. Thus, COBi is in the same position as the plaintiff in *Mann* and, as such, its lost profits are of a type which are recoverable. Accordingly, while COBi will still have the obligation of establishing these damages at trial, the Court should deny the Government's attempt to obtain summary judgment on the issue of damages based on its contention that any breach damages for lost profits are by their nature too speculative to be recovered. Furthermore, COBi will be able to prove direct expenses over and above its lost profits.

## III. CONCLUSION

The central issue in this dispute is whether the lengthy OPTION paragraph of the Lease Agreement provides for only a conditional right of first refusal, or whether it also grants an unconditional option as well. Given the express language of the option and the context of the grant, extrinsic evidence regarding the contract, and California's rules for interpreting leases and option grants, COBi submits that, as a matter of law, it has an unconditional option to extend the lease. The Government's failure to recognize COBi's exercise of its option constitutes a breach of contract, and COBi is entitled to partial summary judgment regarding the Government's liability for breach of contract.

Dated: July 7, 2006

Respectfully submitted,

_s/Neil H. O'Donnell_________
NEIL H. O'DONNELL
ROGERS JOSEPH O'DONNELL & PHILLIPS
311 California Street
San Francisco, CA 94104
Tele. (415) 956-2828
Fax (415) 956-6457

Attorneys for Plaintiff California Oregon Broadcasting, Inc.

OF COUNSEL:

Mark A. Kahn
ROGERS JOSEPH O'DONNELL & PHILLIPS
311 California Street
San Francisco, CA 94104
Tele. (415) 956-2828
Fax (415) 956-6457

CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of July, 2006, a copy of the foregoing "Plaintiff California Oregon Broadcasting, Inc.'s Reply Brief in Support of Motion for Partial Summary Judgment and Opposition to Defendant's Cross-Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Neil H. O'Donnell__________