# UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **CALIFORNIA OREGON BROADCASTING, INC.,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **No. 06-CV-00116-NBF** |

## DECLARATION OF MYRON TISDEL

I, MYRON TISDEL, declare as follows:

1. I am the President & General Manager of KIXE-TV in Redding, California. KIXE-TV is a subtenant to the lease currently held by California Oregon Broadcasting, Inc., for the Shasta Bally telecommunications site.

2. On or about July 15, 2006, KIXE-TV received a letter from the National Park Service instructing it of the steps KIXE-TV will have to take prior to July 31, 2006 if it wants to continue to use the Shasta Bally site. Attached as Exhibit A is a true and correct copy of the letter from the National Park Service.

3. It is my understanding that other subtenants received similar letters from the National Park Service.

4. The letter also requires KIXE-TV to agree to certain conditions in order to continue to use the site. These conditions will create certain difficulties for KIXE-TV. For example, KIXE-TV is planning a major equipment installation as well as alterations of

existing equipment at the Shasta Bally site during August/September 2006. Because the site is covered with snow for much of the year, it is imperative that KIXE-TV be able to move forward with the installation and alterations as currently scheduled. It is my understanding that certain other subtenants have similar projects planned for August 2006.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 21, 2006.

MYRON TISDEL

# EXHIBIT A

United States Department of the Interior
NATIONAL PARK SERVICE
WHISKEYTOWN NATIONAL RECREATION AREA
WHISKEYTOWN-SHASTA-TRINITY NATIONAL RECREATION AREA
P.O. BOX 188
WHISKEYTOWN, CA 96095-0188

IN REPLY REFER TO:

WHIS L 3027

July 14, 2006

Mr. Myron A. Tisdel
President and General Manager
KIXE
603 N Market Street
Redding, CA 96003

Dear Mr.Tisdel:

We have received your SF-299 application for a National Park Service ("NPS") right-of-way permit for your communications facilities located on the summit of Shasta Bally in Whiskeytown National Recreation Area (the "Park"). The purpose of this letter is to advise you of the next steps in the permitting process.

The lease held by California Oregon Broadcasting, Incorporated ("COBi") for the Shasta Bally telecommunications site expires on July 31, 2006. NPS has informed COBi that NPS cannot offer COBi a lease renewal, and COBi has filed a lawsuit regarding the issue of lease renewal. At this point in the litigation, both COBi and the United States have filed dispositive motions in the case, however, we do not expect to receive a decision in the litigation before July 31, 2006. Consequently, we expect the litigation to continue after the current lease with COBi expires. While the litigation proceeds, NPS intends to move forward with the NPS right-of-way permitting process with all parties who have filed SF-299 application forms.

The next major steps in the permitting process include completion of compliance documentation under the National Environmental Policy Act ("NEPA"), determination of the charge for use and occupancy of the lands to be assessed under 36 C.F.R. § 14.26, and completion of right-of-way permit documents based on the NPS Right-of-Way Permit template (the "Template"). The regulation at 36 C.F.R. § 14.22 provides that applicants for right-of-way permits are required to reimburse the United States for all costs incurred by the United States in processing the permit application, including preparation of the NEPA documentation. In the interest of expediting the permitting process, the NPS will apportion the costs in the following manner among the right-of-way permit applicants. NPS will divide the costs of the NEPA compliance equally among those entities who have applied to own towers and/or buildings on the site. This approach makes sense because tower and building owners have the greatest impact on the environment and also have the discretion to determine whether to allow other companies to co-locate on their towers and in their buildings. The remaining costs will be apportioned equally among all applicants. After completion of the NEPA and appraisal process, applicants will be assessed for the costs for road maintenance of the Shasta Bally Road. These road maintenance costs have yet to be determined.

NPS currently intends to use a consulting firm to prepare the NEPA documentation. Estimates for the preparation of the NEPA documentation have ranged from $33,000 to $40,000, and NPS intends to use the firm Kleinfelder that submitted the bid of $33,000. In order to ensure that the process can begin as soon as possible, NPS is requiring the five tower and building owners to each submit a check to the NPS

in the amount of $ 4,125 per tower to cover the $33,000 estimate (COBi owns four towers, other companies own single towers). If this payment ultimately exceeds actual costs incurred by NPS, a refund may be made in accordance with 36 C.F.R. § 14.22(a)(8).

NPS currently intends to use an appraisal firm to calculate the fair market value charge for use and occupancy of the lands. The current estimate for the preparation of the appraisal is $20,000. NPS also currently estimates its initial expenses for processing the permit applications at $8,000. Currently, 19 non-government entities have filed applications for the site. Accordingly, NPS is requiring all 19 companies to submit a check to NPS in the amount of $1,474 to cover the appraisal and initial estimate of NPS costs. For the tower and building owners, this check is in addition to the $4,125/per tower discussed in the paragraph above. As discussed above with respect to the payments made by the tower owners, any payments that ultimately exceed actual costs incurred by NPS are subject to refund in accordance with 36 C.F.R. § 14.22(a)(8). Our records indicate that your company owns a tower, therefore, please submit checks totaling $5,559.

We wish to draw your attention to further regulations regarding cost reimbursement. As provided by 36 C.F.R. § 14.22(a)(6), "[a]n applicant whose application is denied shall be responsible for administrative and other costs incurred by the United States in processing its application." In addition, as provided by 36 C.F.R. § 14.22(a)(7), "[a]n applicant who withdraws its application before a decision is reached on it is responsible for costs incurred by the United States in processing such application up to the date upon which the authorized officer receives written notice of the withdrawal, and for costs subsequently incurred by the United States in terminating the application review process."

NPS asks for the receipt of this check(s) by July 31, 2006 so that NPS will know by lease expiration whether your company intends to continue with the right-of-way permitting process. Provided that NPS receives your check(s) by July 31, 2006, NPS will allow your company (the "Applicant") to continue to operate its existing equipment on the site on the following terms:

1) Applicant may continue to operate its existing equipment on the site until NPS makes a decision on Applicant's permit application, which NPS currently anticipates by December 31, 2006.

2) Applicant must continue to participate in good-faith throughout the right-of-way permitting process.

3) The Applicant must submit any additional sums required for NPS cost recovery.

4) If Applicant withdraws from the right-of-way permitting process at any time, or if Applicant's application is denied, Applicant shall have ninety (90) days to remove all of its communications equipment (including buildings, towers, and foundations, as applicable) and any other personal property from the Park, repair any damage resulting from such removal, and restore the area to the satisfaction of the NPS. If Applicant shall fail satisfactorily to perform such removal, repair and restoration activities within ninety (90) days, then, at NPS's sole option, Applicant's personal property, including all of its communications equipment, shall either become the property of the NPS without compensation therefor, or the NPS may cause it to be removed and the area to be repaired at the expense of Applicant, and no claim for damages against the NPS, its employees, or agents, shall be made on account of such removal and repair work.

5) Applicant shall not perform any construction or alterations on the site. Applicant shall not authorize any new subtenants on the site.

6) Applicant shall notify NPS at least 24 hours in advance of making any trips to the site. Applicant may make this notification by telephone to the contact person listed below, however, leaving a voice message does not satisfy this requirement. Applicant must speak directly with the contact person or receive acknowledgment from the NPS that the contact person has received the notification. The notice shall include the date and time of the proposed access trip. The contact person for NPS is Chief Ranger, Andy Zavanelli, who can be reached at 530-242-3413 or Jim F. Milestone, who can be reached at 530-242-3460.

7) Applicant shall notify NPS in writing at lease ten (10) business days in advance of any maintenance or repair activities. Written notification shall be deemed to have been given upon: (i) delivery by recognized overnight common carrier courier service that guarantees next-day delivery; (ii) delivery in person or by messenger; (iii) receipt of notice deposited in the United States mail, first class and postage prepaid with return receipt requested; or (iv) written confirmation of receipt of facsimile transmission during business hours on a business day which is neither a United States federal nor a California state holiday. Notice shall be sent to:

Chief Ranger Andy Zavanelli
Whiskeytown National Recreation Area
P.O. Box 188
Whiskeytown, CA. 96095
Phone: 530-242-3413 Fax: 530-246-5154

In the case of emergency repairs, Applicant may first make notification by telephone to the contact person listed in paragraph 7, to be followed up with written notification pursuant to the terms of this paragraph 8.

8) Applicant's activities on the site are subject to all applicable laws and policies, including the laws, regulations, and policies applicable to NPS, which include but are not limited to the provisions of 36 C.F.R. Part 14 and NPS Reference Manual 53.

9) NPS reserves a right of entry for purposes of monitoring or inspecting activities of Applicant or for any other purpose.

10) Applicant agrees that any permission granted by this letter is personal and exclusive to Applicant and no transfer or assignment shall be made.

11) Applicant shall not engage in any activity that constitutes, causes or results in waste or a nuisance, and shall at all times exercise due diligence to maintain Park lands and any improvements thereon in a safe and orderly condition; shall minimize the visual and aesthetic impacts to the extent feasible; and shall implement resource protection and conservation measures to prevent damage to the Park. Required resource protection and conservation measures shall be as directed by the NPS.

12) Unless approved in advance in writing by the NPS, Applicant shall not, and Applicant shall ensure that Applicant's agents shall not, bring, generate or otherwise use, store, or handle any Hazardous Material upon, about, beneath or from the Park. "Hazardous Material" means any material or other substance (including storage tanks) the presence of which is governed by any applicable law as being hazardous or harmful to human health or the environment or that is toxic, explosive, corrosive, flammable, infectious, ignitable, radioactive, carcinogenic, mutagenic, or otherwise hazardous or is or becomes regulated by any agency under any applicable Law. This prohibition does not apply to Applicant's use of vehicles to access the site. Applicants who

currently use Hazardous Materials on the site are asked to describe their activities in writing to NPS by July 31, 2006, so that NPS may consider these uses on a case-by-case basis. These activities will need individual written approvals by NPS.

13) Applicant represents and warrants to the NPS that the individual signing the concurrence block below is duly authorized to agree to these terms on behalf of the parties on whose behalf it is indicated that he or she is signing.

14) Applicant shall add the United States of America, the National Park Service, and their employees and agents as additional insureds to any liability policies Applicant carries for its operations located on Shasta Bally. On or before July 31, 2006, Applicant shall provide to NPS a certificate of insurance that shall have attached a copy of the endorsement from each policy providing for the United States of America, the National Park Service, and their employees and agents' status as additional insureds, such endorsement signed by a duly authorized official of the insurer.

15) Applicant assumes the risk of any liabilities associated with travel on the Shasta Bally Road.

16) Applicant agrees to indemnify, reimburse, defend, save and hold harmless the NPS, its employees, and agents for and from any and all liability, claims, demands, damages, injuries, losses, civil penalties, civil fines, costs (including consultant charges and expert charges), causes of action, judgments, expenses and the like for any loss of business revenue or income, any loss or destruction of, or damage to, any real or personal property, including but not limited to damage by fire or other perils, or for the death of or injury to persons, of any nature whatsoever and by whomever made, which may arise out of or be incident to Applicant's activities within the Park.

We look forward to receiving your check(s) and concurrence with the terms of this letter by July 31, 2006. Please send your check(s) and concurrence to:

Jim F. Milestone
Office of the Superintendent
Whiskeytown National Recreation Area
P.O. Box 188
Whiskeytown, CA 96095

If we do not hear from you by July 31, 2006, we will assume that you have chosen to withdraw from the right-of-way permitting process, and we will send you separate correspondence regarding procedures for removal of your communications equipment and any other personal property from the site and for accompanying restoration work. If you have any questions or require any further information, please feel free to contact me at 530-242-3460 or email me at Jim_Milestone@nps.gov. However, please be advised that I cannot respond to questions regarding the specific details of the litigation.

Sincerely,

Jim F. Milestone

Jim F. Milestone
Superintendent

cc: Paula Lee and Suzanne Boyce Carlson, Office of the Field Solicitor